723 So.2d 1193 (1998)
Mary Frances BINGHAM a/k/a Mary Frances Taylor a/k/a Mary Frances Bingham-Taylor a/k/a Mary Francis Bingham, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-01108 COA.
Court of Appeals of Mississippi.
November 24, 1998.
*1194 Richard Burdine, Columbus, Attorney for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
Before McMILLIN, P.J., DIAZ, and PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. This is a direct appeal of a criminal conviction from the Circuit Court of Choctaw County, where Mary Frances Bingham was convicted of the crime of sale of cocaine, a schedule II controlled substance. Aggrieved by the denial of her motion for a directed verdict at the close of the State's case and subsequent judgment and conviction of the trial court, Bingham filed a motion for a new trial or, in the alternative, a JNOV, both of which were denied. This appeal ensued.

FACTS
¶ 2. On November 10, 1994, Officer James Catalano conducted an undercover drug operation in Choctaw County with Agent Marshall Pack. After an arranged pre-buy meeting, Officer Catalano gave Agent Pack one hundred dollars with which to buy cocaine and fitted Agent Pack with a body microphone. Agent Pack was acting on his knowledge that the Binghams had been selling cocaine from their house in Weir as he had been to the neighborhood on two previous occasions and had met Bingham and her husband before. Officer Catalano listened to the transmission of the sale recorded by Agent Pack's body microphone.
¶ 3. Upon arriving at the house, Agent Pack found Wayne Rush, Bingham's hairdresser, in the driveway talking to Vanessa, Bingham's daughter. Mary Frances Bingham was standing inside the screen door, and Agent Pack asked for her husband. Bingham told Pack her husband was not at home and asked him what he wanted. Agent Pack said he wanted to spin a bill which was a street term for buying drugs. Bingham told Rush to go to Pack's car to get the money. After Bingham counted the money, she gave Rush five rocks of cocaine, and he handed them to Agent Pack in clear plastic wrap. Although Bingham remained in the house during the transaction, she passed the cocaine through the open door and could be heard in the transmitter to comment about Agent Pack's "pretty eyes" and to say "here's your plastic." She also can be heard saying that she would tell her husband that Pack had been there. Although the video camera did not record Bingham's image, the investigation produced a surveillance video including audio which pictures Rush participating in the sale of cocaine. At trial Rush, who was also charged and pled guilty to similar charges, testified that he had known Bingham for six or seven years, and he had known her husband, "Scooby Dog", all of his life. Rush testified that Bingham gave him the drugs and plastic to wrap them in during the course of the sale of cocaine for which she has been convicted.
¶ 4. Agent Pack gave the contents of the plastic wrap to Agent Catalano. The contents *1195 were sent to the crime laboratory where tests revealed that the substance was cocaine. As a result of this undercover investigation, Bingham was arrested and charged with the sale of cocaine.

ISSUE
¶ 5. Bingham frames her issue on appeal as being that the verdict was against the overwhelming weight of the evidence. However, in the summary of her argument she also argues that there was insufficient evidence presented by the state such that the defense motion for a directed verdict should have been granted. We will deal first with the sufficiency of the evidence in terms of whether the State made out a sufficient case against the defendant to survive a motion for a directed verdict and JNOV.

ANALYSIS
¶ 6. A challenge to the legal sufficiency of the evidence springs from the denial of a motion for directed verdict at the end of the State's case and from a motion for JNOV after the jury verdict. McClain v. State, 625 So.2d 774, 778 (Miss.1993). Bingham did move for a directed verdict at the close of the State's case-in-chief, although the motion was not specific in nature as to which of the elements of the crime the State allegedly failed to prove. The Mississippi Supreme Court has found:
motions for a directed verdict must be specific and not general in nature. A motion for a directed verdict on the grounds that the state has failed to make a prima facie case must state specifically wherein the state has failed to make out a prima facie case. In the absence of such specificity, the trial court will not be put in error for overruling the same.
Banks v. State, 394 So.2d 875, 877 (Miss. 1981).
¶ 7. However, looking beyond the deficiency of Bingham's directed verdict motion, the record reveals that there was sufficient evidence presented from which the trial court could properly deny the motion. A challenge such as this requires an analysis of the evidence by the trial judge to determine whether a hypothetical juror could find, beyond a reasonable doubt, that the defendant is guilty. May v. State, 460 So.2d 778, 781 (Miss.1984). If the judge determines that no reasonable juror could find the defendant guilty, then he must grant the motion. id. If the judge finds that a reasonable juror could find the defendant guilty beyond a reasonable doubt, then he must deny the motion. Id.
¶ 8. Bingham also made a motion for a JNOV, or, in the alternative, a motion for a new trial after the verdict was returned. This Court must rule on the last challenge made, which is the motion for a JNOV, and this Court's scope is limited to an examination of whether the facts presented point in favor of the defendant to the extent that reasonable jurors could not have found the defendant guilty beyond a reasonable doubt, viewing all facts in the light most favorable to the State. Blanks v. State, 542 So.2d 222, 225-26 (Miss.1989).
¶ 9. The State put on ample legal proof of the crime of the sale of a controlled substance, i.e., cocaine, through its witnesses. Agent Catalano testified as the officer who arranged the pre- and post-buy meetings with Agent Pack. Catalano and Officer Mike Henson listened to the transmission of the sale recorded by the body microphone worn by Agent Pack. Agent Pack also testified about the sale.
¶ 10. J.C. Smiley testified as an expert drug analyst of the substance retrieved from the sale and sent to the crime laboratory in Batesville. He said that the white, rock-like substance in exhibit S-1 was, in his opinion, cocaine base, commonly known as crack cocaine.
¶ 11. The State also called Rush, who testified on behalf of the State as described in the facts related earlier in this opinion. Through a videotape of the transaction, which was played for the jury, Rush identified Vanessa (Bingham's daughter), himself, and Officer Pack. Rush identified Bingham as the person who distributed the cocaine.
¶ 12. Bingham testified that she was at home, recovering from a heart attack, on the day in question, and that although she remembered *1196 Rush being at the house, she only had some conversation with him while she sat on the couch in her living room. Her testimony was that Rush had an exchange with Agent Pack. However, Bingham further testified that her husband, Scooby Dog, was selling drugs, but that he was not selling them out of the house. The jury heard Bingham's voice on the audio tape offering Rush plastic wrap for the drugs, and she admitted that it was her voice on the audio tape telling Pack that she would tell her husband that Pack had come by.
¶ 13. Under Miss.Code Ann. § 41-29-139(a)(1) (Rev.1993), Bingham is guilty of the sale or transfer of a controlled substance if she is personally present at a drug transaction and aids and abets the sale even if she never has control of the drug and receives no remuneration or consideration. Johnson v. State, 642 So.2d 924, 927 (Miss.1994), Minor v. State, 482 So.2d 1107, 1111-12 (Miss.1986). Given the testimony by Bingham of the drug activity in the vicinity of her house and her voice on the audio tape, a reasonable juror could find beyond a reasonable doubt that, at the time of the drug sale to Pack, Bingham was "minding the store" for her husband and did involve herself in the transaction.
¶ 14. In determining whether a verdict is against the overwhelming weight of the evidence, this Court must view all the evidence in the light most consistent with the jury verdict and should not overturn the verdict unless we find that the trial court abused its discretion when it denied the motion. Blanks, 542 So.2d at 228.
¶ 15. Bingham testified in her defense that she was not identified on the videotape and that she remained in the house, uninvolved with the drug transaction. The thrust of Bingham's argument that the verdict was against the overwhelming weight of the evidence involves calling into question the credibility of Rush because of his involvement and guilty plea in this sale. She also testified that while Wayne Rush and her husband were in jail, she had seen Rush, and he told her that he was going to have to testify against her to make a deal with the State and that she should get a good lawyer to show that Rush's testimony was a lie. Rush denied this in rebuttal testimony. Bingham's attorney questioned Rush in cross-examination and revealed this information to the jury. Rush's credibility is a matter for the jury to decide. The proper function of the jury is to decide the outcome in this type of case, and the court should not substitute its own view of the evidence for that of the jury's. Blanks v. State, 542 So.2d 222, 226 (Miss.1989).
¶ 16. Even though Bingham cannot be identified on the videotape, there was other probative evidence that she participated in the sale through witnesses and her identification of her voice on the audio tape. Upon reviewing all of the evidence presented in the light most consistent with the verdict, we find that the trial judge did not abuse his discretion in denying Bingham relief based on her attacks on both the sufficiency and the weight of the evidence establishing her guilt. Finding no error in the lower court's denial of a directed verdict and the motion for a new trial, we affirm Bingham's conviction.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF CHOCTAW COUNTY OF CONVICTION OF THE SALE OF COCAINE A SCHEDULE II CONTROLLED SUBSTANCE AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS TO RUN CONSECUTIVELY TO ANY PREVIOUS SENTENCE; APPELLANT'S DRIVERS LICENSE SUSPENDED AND FINE OF $5,000 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., concur.