772 So.2d 1095 (2000)
Brian GILMORE a/k/a `Boo Boo', Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01996-COA.
Court of Appeals of Mississippi.
December 12, 2000.
*1096 Thomas H. Pearson, Clarksdale, Attorney for Appellant.
Office of the Attorney General by Billy L. Gore, Attorney for Appellee.
Before McMILLIN, C.J., IRVING, and MOORE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Brian Gilmore, convicted of armed robbery, has appealed his conviction to this Court. He presents three issues which he claims would entitle him to relief. First, he claims that the alleged victim's in-court identification of him should not have been allowed because the victim's ability to identify his assailant was hopelessly tainted *1097 by certain pre-trial events. Secondly, Gilmore claims that the State's evidence was insufficient, as a matter of law, to prove the use of any instrumentality that would support the proposition that the assailant was armed. Thirdly, Gilmore suggests that the court erred in refusing to instruct the jury as to the legal effect of the victim's prior statements regarding his ability to identify Gilmore as the assailant, which statements were inconsistent with the victim's testimony at trial. Finally, Gilmore claims that he was denied a fundamentally fair trial when the prosecuting attorney purported to excuse two alibi witnesses summoned by Gilmore, the result being that these witnesses were unavailable when the defense began its presentation.
¶ 2. For reasons we will proceed to explain, we find the first, third and fourth issues to be without merit. However, we conclude that the second issue has merit, and we reverse and remand for re-sentencing on the charge of simple robbery.

I.

Facts
¶ 3. Perhaps imprudently, Leon Sacks ultimately to be the victim of the crime now under considerationwithdrew $3,000 in cash from his savings, thinking to use the money to buy gifts in anticipation of the upcoming holidays. However, in advance of any anticipated shopping excursion, Sacks purchased and drank a few beers in celebration of the end of the work week. He thereafter accepted what he thought to be a ride home in an automobile with three other men although, according to his testimony, he only knew the driver as being a former classmate of his brother and did not know the other two men at all. Rather than taking Sacks home, the men drove him down a dark road, stopped on the pretext of having to relieve themselves, and proceeded to beat and kick Sacks. According to Sacks, the three then absconded with $2,800, being that part of the original $3,000 Sacks still had in his possession. During the course of these events, Sacks received a puncture wound to his leg for which he received medical treatment at a local hospital. Sacks claimed that he thought he had been shot, but there was no evidence presented, other than Sacks's own unsupported speculation, to suggest that the puncture wound was the result of a gunshot.
¶ 4. Sacks, on meeting with law enforcement officials the morning after the occurrence, offered a physical description of the driver of the car. Upon hearing the description, the local chief of police spontaneously offered the opinion that Sacks had described Brian Gilmore, and ultimately Gilmore was arrested, indicted, and tried as a principal in the robbery of Sacks.

II.

The First Issue: Identification of Gilmore at Trial
¶ 5. Sacks, during his testimony at trial, pointed out Brian Gilmore as being the driver of the car on the night he was beaten and robbed of his money. No objection to this in-court identification was offered by the defense. However, later in the trial it was brought out that an investigating officer had supplied the defendant's name in Sacks's presence after hearing Sacks give a description of the driver and his vehicle.
¶ 6. Now on appeal, Gilmore raises for the first time the issue of whether Sacks's in-court identification was so hopelessly tainted by the suggestive nature of the investigating officer's comments that it would not support Gilmore's conviction. We note at the outset that there was no attempt to suppress Sacks's in-court identification by a pre-trial motion, and no contemporaneous objection was offered to the identification. Thus, procedurally, the only possible error that could be preserved for appellate review is an attack on the sufficiency of the evidence. The thrust of the argument would have to be that the in-court *1098 identification was the only evidence linking Gilmore to the crime and that, under the circumstances, Sacks's in-court identification was so doubtful as to lack any probative value. The argument would then necessarily proceed along the line that, because of the failure of the State to otherwise link Gilmore to the crime, the evidence was insufficient as a matter of law to support his conviction.
¶ 7. The evident problem with this argument is a procedural one. In order to preserve a challenge to the sufficiency of the evidence for appellate review, the defendant is required first to present the matter to the trial court for consideration through an appropriate and timely motion. Normally, this challenge to the sufficiency of the evidence comes as a motion for directed verdict at the close of the evidence or as a motion for JNOV after the jury has returned a verdict unfavorable to the defendant. Bingham v. State, 723 So.2d 1193 (¶ 6) (Miss.Ct.App.1998). Gilmore did not advance the proposition that Sacks's in-court identification was so defective as a matter of law that it was insufficient to implicate him in the crime by way of a motion for directed verdict at the close of the evidence. Rather, the record shows that the only issue raised in Gilmore's directed verdict motion was that the State failed as a matter of law to prove the use of a deadly or dangerous instrumentality that would support an armed robbery conviction. Neither did Gilmore specifically raise the issue of the lack of probative value of Sacks's in-court identification in his JNOV motion. Instead, he only raised a generic challenge that "[t]he evidence does not support a verdict of guilty." There is no record of a post-verdict hearing on the JNOV motion at which Gilmore sharpened that rather generic and largely meaningless assertion to specifically attack Sacks's in-court identification.
¶ 8. On those facts, we find that Gilmore is procedurally barred from arguing, for the first time on appeal, that the evidence linking him to the robbery of Sacks was insufficient as a matter of law to support his conviction. Martin v. State, 749 So.2d 375 (¶ 10) (Miss.Ct.App.1999).

III.

The Second Issue: Evidence that Sacks's Assailants Were Armed
¶ 9. Gilmore points out that, in order to be convicted of armed robbery on the theory advanced by the prosecution, the State had to prove beyond a reasonable doubt that the robbery was accomplished by "putting [Sacks] in fear of immediate injury to his person by the exhibition of a deadly weapon...." The only evidence on this point was Sacks's own testimony that, at some point during the time he was being assaulted, he felt a sharp pain in his leg that made him think he had been shot or possibly stabbed. At that point, he claimed that he "played possum" to avoid further injury, the result being that his assailants were able to obtain the money from his pocket and abscond. The question presented, therefore, is whether Sacks's sensation of feeling a sudden sharp pain in his leg, together with proof that he did, in fact, receive some sort of puncture wound, was enough to support a finding that a deadly weapon was exhibited in a way that put Sacks in fear of further immediate injury to his person.
¶ 10. The State correctly argues that there is no necessity that Sacks actually view the weapon, and that this visual observation produce the fear of injury that caused him to submit to being robbed. Certainly, that would be the typical scenario that might be expected, but there is no reason why, for example, a blindfolded victim might not be told of the existence of a deadly weapon and permitted to feel it as a way of provoking the fear necessary to overcome the victim's will to resist. In the same vein, a person resisting a would-be robber might be dissuaded from further resistance by discovering, by any of his *1099 available senses, that his assailant is in possession of a deadly weapon and appears capable of inflicting injury unless the victim desists. The problem in this case, however, is that there simply is no evidence to suggest what instrumentality produced the puncture wound on Sacks's leg. The wound occurred during the course of a struggle outside in the dark and could, with equal probability, have been produced from a stick or other instrumentality that was already there as by a weapon of some description wielded by one of the assailants. That Sacks was purposely stabbed in the leg with a device brought to the scene by one of the assailants for the purpose of either (a) persuading Sacks of the folly of resistance, or (b) actually inflicting an injury should he fail to yield to the persuasive power of the instrument, is a possibility, but nothing more. Criminal convictions cannot be sustained upon mere possibilities. Westbrook v. State, 202 Miss. 426, 32 So.2d 251, 252 (1947).
¶ 11. Nevertheless, we are satisfied that all elements of the lesser-included-offense of simple robbery were proven by the State. For that reason, there is no necessity to reverse the conviction and remand for a new trial. Rather, as permitted by such cases as Wade v. State, 748 So.2d 771 (¶ 20) (Miss.1999), we think it appropriate to reverse the conviction for armed robbery and remand for re-sentencing for the lesser-included offense of simple robbery.

IV.

The Third Issue: Failure to Instruct on Victim's Identification
¶ 12. Gilmore asked for an instruction telling the jury that, in determining what weight to give to Sacks's in-court identification of Gilmore, it could properly consider that Sacks had given prior statements inconsistent with his trial testimony. The trial court refused the instruction upon concluding that there was no competent evidence that Sacks had, in fact, given statements regarding his ability to identify Gilmore that were inconsistent with his trial testimony. Gilmore now contends that this was reversible error in that he was entitled to have the jury instructed regarding how to consider an in-court identification. In support of his argument, he cites Davis v. State, which set out a suitable instruction giving five different elements that the jury ought properly to consider in passing on the credibility of a witness's ability to identify the defendant as the culprit. Davis v. State, 568 So.2d 277, 280 (Miss.1990).
¶ 13. However, Gilmore's requested instruction bears no resemblance to the instruction discussed in Davis. Rather than informing the jury of the various relevant considerations in evaluating a purported eyewitness identification, Gilmore's requested instruction deals with the effect of proof of prior statements by the witness that are inconsistent with testimony given at trial. The laws of evidence relating to impeachment of a witness by showing prior inconsistent statements by the witness are general in scope and not confined to identification testimony.
¶ 14. The requested instruction thus raises the separate question of whether the defendant is entitled to have the jury instructed as to how it should evaluate prior inconsistent statements by a witness. However, we find it unnecessary to reach the question because, in the view of this Court, there is no evidence indicating that Sacks had given prior inconsistent statements regarding his ability to identify his assailant. The only point of contention was whether Sacks was able, prior to his conversations with law enforcement officials, to link a name with the person who assaulted him. Sacks was consistent, both prior to trial and during trial, in the assertion that he had a long familiarity with the person and recognized him immediately as a man who had attended school with his (Sacks's) brother. Thus, whether he knew his name at the time or only learned it later does not give rise to an inconsistency *1100 in Sacks's testimony concerning his ability to subsequently recognize the driver of the vehicle on the night he was robbed. An instruction, even though a correct statement of the law, is not proper if there is not evidence in the record supporting the giving of the instruction. Turner v. State, 721 So.2d 642 (¶ 21) (Miss.1998). We find no error in the trial court's refusal to instruct the jury concerning alleged inconsistencies in Sacks's prior statements regarding his ability to identify Gilmore as one of his assailants.

V.

The Fourth Issue: Dismissal of Defense Witnesses
¶ 15. Gilmore testified in his defense that he was at a social gathering during the time the robbery occurred and claimed that there were at least three witnesses who could place him at the party at the critical time. The defense had issued subpoenas for three witnesses whom Gilmore asserted were these alibi witnesses; however, when the defense began to put on its evidence it developed that these witnesses had apparently appeared at the courthouse but, after a discussion with some individuals that included the prosecuting attorney, the witnesses had left and did not return.
¶ 16. Gilmore now claims that he was denied due process because of the circumstances in which his witnesses became unavailable. We find this contention to be without merit. The record reveals that Gilmore's attorney represented to the trial court that he would call Gilmore as a witness and then consider calling one or more of the purported alibi witnesses if they had appeared by that time; otherwise, the defense would rest. There was not a request by the defense for additional efforts by court officials to enforce the subpoenas or that the case be continued while those efforts were undertaken. Instead, defense counsel appeared to focus on efforts to persuade the jury that the defense had taken all reasonable steps to ensure the presence of these witnesses.
¶ 17. Certainly, a criminal defendant has a constitutional right to invoke the "compulsory process" of the State "for obtaining witnesses in his favor." U.S. Const. Amend. VI. However, when the normal process for procuring a witness deemed vital to the defense has failed for any reason, the defense's duty to diligently pursue the presence of the witness has not been satisfied. If a witness fails to "appear as commanded [the defense] should ask for an attachment" to produce the reluctant witness. King v. State, 251 Miss. 161, 168 So.2d 637, 641 (1964). If the reluctant witness cannot, even by extraordinary means, be produced in a timely manner, the defense is entitled to pursue a continuance until the witness's presence can be compelled. Miss.Code Ann. § 99-15-29 (Rev.2000). In this case, defense counsel made no effort beyond the original subpoenas to obtain the presence of these witnesses or to persuade the court of the necessity that the case be continued until the whereabouts of these witnesses could be determined. By resting without pursuing any further effort to procure the presence of these absent witnesses, we are satisfied that the defense waived any right to complain based on the allegation that these supposed alibi witnesses apparently chose to disregard the subpoenas issued for them. The alternate claim that members of the prosecution team purposely excused these potential witnesses without having the authority to do so in order to ensure their unavailability finds no evidentiary support in the record.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF QUITMAN COUNTY IS REVERSED INSOFAR AS IT ADJUDICATES THE DEFENDANT GUILTY OF ARMED ROBBERY; HOWEVER AN ADJUDICATION OF GUILT OF THE LESSER-INCLUDED OFFENSE OF ROBBERY IS AFFIRMED AND THIS MATTER IS REMANDED FOR RE SENTENCING *1101 PURSUANT TO THE PENALTIES PROVIDED BY LAW FOR THAT CRIME. THE COSTS OF THIS APPEAL ARE ASSESSED TO QUITMAN COUNTY.
KING and SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, and THOMAS, JJ., concur.