# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01067-SCT

*VERNON E. BROWN a/k/a HASH*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/5/2001 |
| TRIAL JUDGE: | HON. RICHARD D. BOWEN |
| COURT FROM WHICH APPEALED: | ITAWAMBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CAROLYN R. BENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/24/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., EASLEY AND CARLSON, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

### PROCEDURAL HISTORY

¶1. Vernon E. Brown a/k/a "Hash" Brown (Brown) was indicted by the Itawamba County grand jury on or about November 21, 2000. The indictment charged that on May 22, 2000, Brown uttered a false check to John Blumer (Blumer) d/b/a Piggly Wiggly to the injury of Blumer and The People's Bank and Trust Company and others. The indictment was amended January 22, 2001, at the State's request to charge Brown as a habitual offender pursuant to Miss. Code Ann. § 99-19-81 (2000).

¶2. Brown was tried before a jury on June 5, 2001. At the close of the prosecution's case, Brown's motion for a directed verdict was denied. Brown put on no proof, and he was found guilty of the crime charged on the same day. The trial court determined that Brown was qualified to be sentenced under § 99-19-81 as a habitual offender based on prior felony convictions. Brown was sentenced as a habitual offender to the

maximum term of fifteen years in the custody of the Mississippi Department of Corrections without reduction, suspension, parole, or probation.

¶3. The trial court denied Brown's motion of acquittal, J.N.O.V., or in the alternative, a new trial on June 18, 2001. Brown filed his notice of appeal to this Court on June 26, 2001.

## FACTS

¶4. On or about May 23, 2000, Brown went into the Piggly Wiggly Grocery Store (Piggly Wiggly) in Fulton, Itawamba County, Mississippi. Brown walked to the cashier in the Piggly Wiggly with approximately $90.00 worth of groceries. Brown gave Kantress Evans (Evans), the cashier, a check. The check was drawn on a Tupelo Foam Sales, Incorporated account, was payable to V. Edwin Brown, and was for the sum of $252.45. Evans cashed the check and gave Brown the difference between the face amount of the check and the cost of the groceries. The check was returned to the store by BancorpSouth in Fulton. The check was returned as unauthorized because it was believed to have been stolen.

¶5. Brown appeals to this Court raising the following issues:

**I. Whether the trial court judge erred in failing to recuse himself after it was learned that he had signed an indictment against the defendant as an assistant district attorney in a prior criminal case.**

**II. Whether Brown was denied due process of the law because the procedures of identification were tainted.**

**III. Whether the trial court erred in failing to grant Brown's motion for a directed verdict and his motion for a J.N.O.V.**

## DISCUSSION

## I. Recusal

¶6. Brown alleges that the trial court judge, Judge Richard D. Bowen (Judge Bowen), should have recused himself from presiding over Brown's case. During his service as an assistant district attorney, Judge Bowen signed the indictment in 1979 against Brown on one of the two prior felony convictions used to support Brown's mandatory sentence as a habitual offender. The State's motion to amend indictment to charge habitual offender status asserted that Brown had six prior felony convictions. However, the State only put on proof as to two of the convictions.

¶7. Brown never objected to the admission of the two prior convictions. Brown never offered any evidence to refute the fact that he had been twice convicted of the prior felonies. Brown never requested that Judge Bowen recuse himself as the trial judge. The record reflects that Judge Thomas J. Gardner, III was the circuit judge who entered the order amending the indictment to charge habitual offender status on January 22, 2001. The record reveals the following sentencing proceedings before Judge Bowen:

The Court: All right. The [c]ourt having accepted the verdict of the jury as the judgment of the [c]ourt and ordered that judgment entered and made part of the record in this case, I now note that [Brown] was charged by an amendment to the indictment filed and entered in this cause on January 22, 2001,

as an habitual offender and the [c]ourt will now proceed to hear proof as to whether -- the order amending the indictment is actually also entered on the 22nd day of January 2001, and the motion is contained in the file. It alleges that Mr. Brown is an habitual offender as that term is defined under section 99-19-81 of the Mississippi Code...

The order [amending the indictment] was signed by Judge Gardner on 22 of January 2001, and filed in the cause on the same day...

In that the order amends the indictment to charge that the Defendant is charged under that section, 99-19-81 of the Mississippi Code to be sentenced to the maximum term of imprisonment as prescribed for such felony as he has been convicted of here. And such sentence not to be reduced or suspended, nor shall the person be eligible for parole or probation in that, and the charge goes -- the charged in the order alleges that this [d]efendant, [Brown], was convicted in the Circuit Court of Lee County on two counts of burglary and larceny on March 24, 1978, and sentenced to serve a term of six years and secondly, that he was convicted on the 12th day of February 1980, for the offense of uttering forged prescription and sentenced to serve a term of four years. It alleges four other offenses which is claimed that [Brown] was convicted of stretching from November of 1988 until June 1995. If the [c]ourt is correct in its understanding of the law, proof of any two of those alleged convictions and sentences carry at least one year or more in a facility or penal institution, provided these offenses arose out of separate instance -- incidences at separate times, would suffice to place [Brown] in the habitual offender status for which this [c]ourt would have no discretion but to sentence him to the maximum term of imprisonment for the offense of uttering forgery. And furthermore, ordering that such sentence not be reduced or suspended, nor should the [d]efendant be eligible for parole or probation. But that proof of that is required. Is the State ready to proceed with that proof?

State: Yes, Your Honor.

The Court: Is the [d]efendant ready to proceed?

Defense: As ordered, I need to file or make a motion that the judgment be overturned for lack of proper evidence, or notwithstanding the verdict. Is this the proper time to make that motion?

The Court: Ms. Benson, you may make that, as I understand it, within ten days --

Defense: All right.

The Court: I believe is the time period now. You may make it now if you want to or you may present me a motion and an order at a later time. In any event I will allow you ten days from today's date to make that motion.

Defense: All right. Thank you. Thank you, Your Honor.

The Court: With that are you ready to proceed?

Defense: Yes, sir.

The Court: Very well. The State may call its first witness, or offer its first item of evidence.

State: Your Honor, at this time I have two indictments. One is Lee County Cause 18 -- or 18,216. If

you'll notice the raised seal of Lee County Circuit Clerk is attached and because that is a sealed document, the state would offer that, if you notice at the back it has been stamped that is has been sealed. We would offer that into evidence. I offer what is styled Lee County Cause CR93-288, which also has been authenticated and sealed by the clerk of the court of Lee County, Mississippi, in which [Brown] was previously convicted as an habitual offender in Lee County in that cause number. I offer you both of those causes.

The Court: Ms. Benson, have you seen these documents?

Defense: Are these the same as attached in discovery?

The State: Yes, ma'am.

Defense: Yes, I have those.

The Court: Any objection to them being received?

Defense: No, Your Honor. No, Your Honor.

The Court: All right. Very well. Let them be received and marked as exhibits to this hearing.

(SAME RECEIVED INTO EVIDENCE AND MARKED AS STATE'S EXHIBIT NO. S-3, INDICTMENT IN CAUSE NUMBERS 18,216 AND CR93-288, LEE COUNTY CIRCUIT COURT, AND THE SAME MAY BE FOUND IN A SEPARATE EXHIBIT VOLUME)

The Court: All right. State have anything further?

State: No, Your Honor, we do not.

The Court: All right. Do you rest at this time then?

State: Yes, Your Honor, the State would rest.

The Court: All right. What says the [d]efendent? Do have you have anything to offer?

Defense: Nothing to offer. We rest, Your Honor.

The Court: According to State's Exhibit Number 3, which is a composite consisting of a certified copy of an indictment returned by the Circuit -- rather the Grand Jury of the Circuit Court of Lee County in Cause Number 18,216, Mr. Vernon E. Brown was indicted on two counts in that indictment. Which incidentally was signed by Assistant District Attorney Richard Bowen, wherein the Defendant was charged in Count I with uttering a false prescription. Count II of that indictment charged that Mr. Vernon E. Brown on the 7th day of October, one day after the date charged in the first count, also attempted to utter a false prescription. Part of the same composite exhibit is a certified copy of a sentencing order entered on the 12th day of February 1980, by the Circuit Judge Fred Wicker, sentencing the [d]efendant upon a conviction as to Count I of that indictment for the offense of uttering a forged prescription, to serve a term of four years in a facility designated by the Department of Corrections. Part of that same composite exhibit contains an indictment rendered by the Circuit Court of Lee, [c]ause [n]umber CR 93-288, during the August term of 1993, charging the

[d]efendant, Vernon E. "Hash" Brown with uttering a false and counterfeit instrument and further charging him in that indictment as an habitual offender. However, it was apparently -- well, it's not apparent whether he was sentenced as an habitual offender in that charge or not, but in any event, he was sentenced to serve by then Circuit Judge Barry Ford, for conviction of that offense of uttering a forgery on the 30th day of June 1995, to serve a term of 15 years in the custody of the Mississippi Department of Corrections and that sentence was to run concurrent with an habitual sentence of seven years which was given to the [d]efendant in Itawamba County [c]ause [n]umber CR93-007.

The [c]ourt finds that according to the certified copies of the documents which are made a part of composite exhibit State's Number 3, that there is proof beyond a reasonable doubt that the [d]efendant in this case, [Brown], has been convicted twice previously of felonies upon charges separately brought and arising out of separate incidents at different times and therefore -- and further, according to those convictions, was sentenced to serve separate terms of one year or more in the state and federal penal institutions and he should, therefore, be sentenced to the maximum term of imprisonment prescribed for the felony in this case, [c]ause [n]umber CR00-023, here in the Circuit Court of Itawamba County, Mississippi. And further, that the maximum term of imprisonment for which he should be sentenced for this felony should not be reduced or suspended, nor should he be eligible for parole or probation.

The [c]ourt finds all of that beyond a reasonable doubt. Ms. Benson [Defense] and [Mr. Brown], would you stand and come to the podium, please?

(THE DEFENDANT AND HIS COUNSEL STOOD AND CAME TO THE PODIUM)

The Court: [Mr. Brown], is there anything you'd like to tell the [c]ourt before I impose sentence upon you?

Brown: No, sir.

The Court: Ms. Benson, anything you'd like to say?

Defense: No, Your Honor.

¶8. There were two adjudications over which the trial judge presided. The trial judge first presided over the trial during the guilt phase of the trial. The trial judge then conducted a hearing to determine whether Brown had at least two prior felony convictions, subjecting him to receive a mandatory sentence as a habitual offender.

¶9. The law surrounding the recusal of a judge in Mississippi is well settled. Under Canon 3 of the Code of Judicial Conduct, an appellate court uses an objective standard in deciding whether a judge should have disqualified himself from hearing a case. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Taylor v. State*, 789 So.2d 787, 797 (Miss. 2001).

¶10. This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. *Bredemeier v. Jackson*, 689 So.2d 770, 774 (Miss. 1997). When a judge is not disqualified under the constitutional or statutory provisions, the decision is left up to each individual judge and is subject to review

only in a case of manifest abuse of discretion. *Taylor*, 789 So.2d at 797; *Buchanan v. Buchanan*, 587 So.2d 892, 895 (Miss. 1991). "A judge is not disqualified to sit at the trial of one accused of crime merely because previously thereto he has participated in other legal proceedings against the same person." *Adams v. State*, 220 Miss. 812, 72 So.2d 211, 214 (1954) (citing 30 Am.Jur. *Judges* § 82).

## A. Guilt Phase

¶11. The trial judge's involvement in signing one of Brown's previous indictments had nothing to do with the trial of the instant case. In *Taylor*, 789 So.2d at 797, this Court said as follows, "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." None of the facts regarding guilt in the instant case had anything to do with the trial judge's prior involvement when he was an assistant district attorney. The prior prosecution did not compromise the judge's impartiality. The evidence does not support a finding that the trial judge's impartiality was compromised. We find that a reasonable person knowing all the circumstances would not harbor doubt about the trial judge's impartiality in conducting the trial. We find that this issue does not merit the reversal of the conviction.

## B. Sentencing Phase

¶12. Miss. Code Ann. § 99-19-81 (2000) provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, **shall** be sentenced to the **maximum term** of imprisonment prescribed for such felony, and such sentence **shall** not be reduced or suspended nor shall such person be eligible for parole or probation.

(emphasis added).

¶13. Judge Gardner had granted the State's request to amend the indictment to charge habitual offender status. At sentencing, once Judge Bowen had determined that at least two prior felony convictions satisfied the requirements of Miss. Code Ann. § 99-19-81, he had no discretion in imposing the maximum term of imprisonment without eligibility for parole or probation.

¶14. We find no argument to support Brown's request for reversal. This issue is without merit.

## II. Identification

¶15. Evans was the cashier who identified Brown as the person who passed her the forged check. Evans identified Brown from the photographic lineup shown to her. Brown alleges that Evans was presented one photograph, that being his photograph. In fact, Evans testified that she was shown ten to fifteen pictures. Brown alleges on appeal that the photographic identification and Evans's testimony as an eyewitness were irreparably tainted. However, this Court finds that the facts do not support Brown's allegations. Furthermore, Brown never raised a contemporaneous objection at trial to Evans's testimony and did not file a pre-trial motion to suppress. Since Brown did not preserve the issue for appeal, we find that Brown is procedurally barred from raising this issue on appeal. However, the issue will be briefly addressed by this Court.

¶16. On direct examination by the State, Evans testified as follows:

State: Ms. Evans, I hand you what's been marked as State's Exhibit Number 1 for identification, and I ask you to look at that and I ask you if you recognize it?

Evans: Yes, sir.

State: And how do you recognize it?

Evans: I took this check that was returned. It was returned back to the store and I was the cashier that cashed it. ...

State: Now, can you tell us how you remember cashing that check?

Evans: I remember cashing it, because after I cashed it the person, he had a problem with the amount of change that I had given him. He said that it was wrong.

State: And was it wrong?

Evans: No, sir.

State: Okay. Ms. Evans, I want you to look around this courtroom and I want you to tell us if the individual that came into your store at Piggly Wiggly on that date and passed that check to you?

Evans: Yes, sir.

State: Would you please point him out to us?

Evans: That guy right there. ...

State: Your Honor, may the record reflect that the witness has identified the defendant?

The Court: It may so reflect.

State: Now, is there any other reasons why that you would remember that individual and that check?

Evans: Yes, sir. Like, when he was shopping he asked me to -- he asked me would I help him find a personal hygiene item for his wife, because he didn't -- he -- since I was female he thought that I would be better at picking it, you know. And when he came to my register he had a phone call on his cell phone and he seemed to be upset and he was like -- he said it was his wife and that she was hard to please that he tried his best to do what she wanted him to do, and then also when I cashed the check and gave him back his change, he -- he told me that it was wrong, and I got the check back out and I -- we went over it and it was correct and he said, okay, I'm sorry that I gave you such a hard time and he started asking me how long I had been working there and did I remember when Walker's Big Star used to be in that building.

State: Now, did -- why did you accept this check, since it was a out of town check?

Evans: He had bought almost $90.-- worth of groceries and I just figured it would be okay. ...

State: Okay. Now, did your -- did Mr. Bloomer [sic] discuss this check with you when it came back from the bank?

Evans: Yes, sir.

State: And at that time did you know who had passed that check to you?

Evans: Yes, sir.

State: Did you know his name?

Evans: No, sir. ...

State: Ms. Evans, I hand you what's been marked as State's Exhibit Number 2, and I ask you to look at that and I ask you if you have seen that before?

Evans: Yes, sir.

State: And where have you seen that?

Evans: When I was asked did I remember the check, the officer had a -- a line-up of pictures, and he asked me did I recognize anyone of those and I pointed out this person.

¶17. On cross-examination by the defense, Evans maintained her account of events on direct. The record reflects, in pertinent part, as follows:

Defense: What date did an officer come and talk with you?

Evans: On -- since I was the cashier working that night, he -- he showed me a photocopy of a check and asked me did I recognize it and I told him, yes, sir, and I told him what color it was. And he had the original and he looked at it and he was like, yes, ma'am, you're right. And I said, I -- I even remember, you know, what he looked like and so he had a line-up of pictures and he said, well do you see him here, and I said, yes, sir. ...

Defense: And you were shown how many pictures?

Evans: Approximately fifteen, ten or fifteen.

Defense: You were shown 15 pictures?

Evans: Yes, ma'am.

Defense: What did the pictures look life?

Evans: They were all mug shots, I guess you would say.

Defense: They showed you 15 mug shots of the same individual?

Evans: No, ma'am. They were different.

Defense: Of all different individuals?

Evans: (Nodded head affirmatively) ...

Defense: Okay. All you remember are those 15 mug shots and you picked one person out of those mug shots; it that right?

Evans: Yes, ma'am.

Defense: Nothing further, Your Honor.

¶18. A photographic lineup is impermissibly suggestive when the accused is "conspicuously singled out in some manner from others...." *York v. State*, 413 So.2d 1372, 1383 (Miss. 1982). In *Thompson v. State*, 483 So.2d 690, 692 (Miss. 1986), this Court stated:

> An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. [*York*], 413 So.2d at 1383. *See also*, e.g. *Tobias v. State*, 472 So.2d 398, 399, (Miss. 1985); *Wilson v. State*, 451 So.2d 718, 722, (Miss. 1984); *Young v. State*, 420 So.2d 1055, 1058 (Miss. 1982). In practice, Mississippi has tended to lay a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure.

*See also* *Wingate v. State*, 794 So.2d 1039, 1042 (Miss. Ct. App. 2001).

¶19. When there is no attempt to suppress the in-court identification by a pre-trial motion, and no contemporaneous objection is offered to the in-court identification, the issue is not preserved for appellate review except as an attack on the sufficiency of the evidence. *Gilmore v. State*, 772 So.2d 1095, 1097 (Miss. Ct. App. 2000). In the case sub judice, Brown never sought the pre-trial suppression of Evans's testimony as an eyewitness nor offered any contemporaneous objection to Evans's testimony. Even though this issue was not properly presented for appeal, Brown did cross-examine Evans at trial as to her view of the photographic lineup and her recollection of the events in question. The jury heard and observed Evans's testimony. This Court has repeatedly held that "the jury is the final arbitrator of a witness's credibility." *See* *Williams v. State*, 794 So.2d 1019, 1028 (Miss. 2001); *Morgan v. State*, 681 So.2d 82, 93 (Miss. 1996). The jury alone determines the weight and worth of any conflicting testimony. *Hicks v. State*, 812 So.2d 179, 194 (Miss. 2002). The issue raised of Evans's credibility as a witness, as well as, other witnesses at trial rests with the jury. Therefore, we find this issue is without merit.

### III. Legal Sufficiency and Weight of the Evidence

¶20. Brown asserts that his conviction for uttering a forged check is not supported by legally sufficient evidence or the weight of the evidence because there are inconsistencies in witness testimony.

¶21. On the issue of legal sufficiency, a reversal can only occur when evidence of one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." *Dickey v. State*, 819 So.2d 1253, 1256 (Miss. 2002). The standard of review for a denial of a directed verdict, peremptory instruction and a J.N.O.V are identical. *Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997). In *McClain v. State*, 625 So.2d 774, 778 (Miss. 1993), this Court held that a motion for J.N.O.V., motion for directed verdict and a request for peremptory instruction challenge the legal

sufficiency of the evidence. "Since each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. This occurred when the Circuit Court overruled [the] motion for JNOV." *Id*. (citing *Wetz v. State*, 503 So.2d 803, 807-08 (Miss. 1987)).

¶22. It is well established that matters regarding the weight of the evidence are to be resolved by the jury. *Neal v. State*, 451 So.2d 743, 758 (Miss. 1984); *Danner v. State,* 748 So.2d 844, 846 (Miss. Ct. App. 1999). "The court is bound by the jury findings upon an issue presented by the instruction requested by the [defendant]." *Kinney v. State*, 336 So.2d 493, 496 (Miss. 1976). A motion for a new trial challenges the weight of the evidence. *Sheffield v. State*, 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. *Id*. (citing *Gleeton v. State*, 716 So.2d 1083 (Miss. 1998)). This Court held in *McFee v. State*, 511 So.2d 130, 133 (Miss. 1987), that it has limited authority to interfere with a jury verdict. The Court looks at all the evidence in the light that is most consistent with the jury verdict. *Id*. The prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*.

> [I]f there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb.

*Id*. at 133-34. *See also May v. State*, 460 So.2d 778, 781 (Miss.1984). A new trial will not be granted unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. *Groseclose v. State*, 440 So.2d 297, 300 (Miss. 1983). *See also Danner v. State*, 748 So.2d at 846. However, if a jury verdict convicting a defendant is against the overwhelming weight of the evidence, then the remedy is to grant a new trial. *Collier v. State*, 711 So.2d 458, 461 (Miss. 1998).

¶23. As to the credibility of witnesses, this Court in *Gathright v. State*, 380 So.2d 1276 (Miss. 1980), has held that "in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court." *Id*. at 1278 (citing *Davis v. State,* 320 So.2d 789 (Miss.1975)).

¶24. In the case sub judice, the evidence met the legal sufficiency test and the weight of the evidence test for a denial of the motion for J.N.O.V. and the motion for a new trial. Evans provided sufficient testimony to identify Brown as the man who passed the forged check. Evans recounted at trial why Brown stood out in her memory: (1) because he questioned her about female hygiene products, (2) he disputed his change, and (3) he had an argument on his cell phone with someone that he claimed was his wife. Evans recalled accepting the check in question from Brown in exchange for $90.00 worth of groceries. She recalled the color of the original check when shown a photocopy of the check.

¶25. We find that the evidence presented to the jury was legally sufficient and that the guilty verdict is not against the overwhelming weight of the evidence. Accordingly, on June 19, 2001, the trial court correctly denied both the motion for J.N.O.V. and a new trial. This issue is without merit.

## **CONCLUSION**

¶26. For the foregoing reasons, the judgment of the Itawamba County Circuit Court is affirmed.

¶27. **CONVICTION OF UTTERING A FORGERY AND SENTENCE OF FIFTEEN (15) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS. AFFIRMED. SAID SENTENCE SHALL NOT BE REDUCED, SUSPENDED OR EARLIER TERMINATED; NOR SHALL THE APPELLANT BE ELIGIBLE FOR EARNED RELEASE OR PAROLE AT ANY TIME. UPON RELEASE, THE APPELLANT SHALL PAY A FINE OF $10,000.00, COURT COST IN THE AMOUNT OF $248.00 TO THE CIRCUIT CLERK OF ITAWAMBA COUNTY, MISSISSIPPI, AND RESTITUTION TO JOHN BLUMER D/B/A PIGGLY WIGGLY IN THE AMOUNT OF $252.45. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY WITH SENTENCES IN CAUSE NUMBERS CR2000-751RD, CR2001-6 AND CR2001-07, IN DESOTO COUNTY CIRCUIT COURT.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., WALLER, COBB, DIAZ, CARLSON AND GRAVES, JJ., CONCUR.**