LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On August 11, 2004, a jury in the Hancock County Circuit Court found William Ray Black guilty of one count of possession of a firearm by a convicted felon and one count of armed robbery. The same day Black was sentenced as a habitual offender to three years for the possession of a firearm and forty years for armed robbery, both sentences to run concurrently and to be served in the custody of the Mississippi Department of Corrections. Black subsequently filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. After the motion was denied by the trial court, Black filed his appeal to this Court asserting the following issues: (1) the trial court erred in denying his motion for a JNOV or, in the alternative, a new trial; (2) the trial court erred in permitting Detective Tom Roan to testify regarding the photographic lineup; (3) the jury verdict was against the overwhelming weight of the evidence; and (4) the trial court erred in sentencing him as a habitual offender in light of the constitutional prohibition against cruel and unusual punishment.
FACTS
¶ 2. At approximately 5:00 p.m. on February 6, 2004, Black approached his neighbors Mike and Susie Davis about buying Black’s handgun. Mike had previously seen Black’s handgun. Black decided not to sell his gun, telling Mike that “a man is naked without his gun” and “I might need to rob somebody.” Susie was present during this exchange.
¶ 3. Just after 8:00 p.m. that night, a man entered a Subway restaurant in Kiln, Mississippi, brandishing a handgun. The man pointed his gun at the two Subway employees and demanded money from the register. Diana Smith, one of the employees, testified that this man was wearing a black hooded jacket with a blue jacket over it and a camouflage bandana covering the bottom half of his face. Diana stated that the man was white, had “pretty” blue eyes and spoke with a country accent. Per the assailant’s order, Diana placed money from the register in a brown paper bag. At one point the man placed the gun on the counter. The man then ordered Diana and the other employee, Tarah Dittman, to get in *107 the bathroom. Diana stated that at one point he became agitated, showed Diana and Tarah that the gun was loaded and then cocked the gun. After Diana and Tarah went into the bathroom, he fled the scene on foot.
¶4. Black’s friend and roommate, Rodney Harbin, testified that Black came home around 9:15 p.m. that same night acting paranoid and nervous. Harbin said Black was jumping around, calling himself Jesse James and claiming that he had made some money. Black showed Harbin the brown paper bag containing approximately $130. Harbin stated that once Black entered the trailer he took off his clothes and then hid the gun under the washing machine.
¶ 5. Detective Tom Roan, an investigator with the Hancock County Sheriffs Department, responded to the scene of the robbery. Detective Roan secured the scene, interviewed the employees, viewed the security video and photographed footprints found on the side of the building. The Davises were asked to view the security video whereupon Mike recognized the gun used in the robbery as belonging to Black. The handgun had distinctive characteristics of which Mike was familiar. Detective Roan then proceeded to Black’s house, which was located approximately one hundred yards from the Subway. While asking Black some questions, Detective Roan noticed the black hooded jacket. Detective Roan took this jacket to the Subway where Diana was able to identify the jacket as belonging to the perpetrator. Black and Harbin were then taken to the sheriffs office. At some point Black gave a written consent to have his house searched and, subsequently, the gun was found under the washing machine. Detective Roan also found a camouflage bandana in the dryer. Black admitted that he owned the gun and over one hundred dollars was found in his pocket.
¶ 6. Detective Roan took pictures of Black and Harbin and showed them both to Diana. Detective Roan covered both men’s faces from the nose down. Diana was able to identify Black as the perpetrator from seeing his eyes. Diana also became distraught and began to cry after seeing Black’s picture.
¶ 7. Throughout his arrest and trial, Black claimed that Harbin was responsible for the armed robbery.
DISCUSSION
I. DID THE TRIAL COURT ERR IN DENYING BLACK’S MOTION FOR A JNOV?
¶ 8. In his first issue on appeal, Black asserts that the trial court erred in failing to grant his motion for a JNOV or, in the alternative, a new trial. A motion for a JNOV challenges the legal sufficiency of the evidence. Our standard in regards to these challenges is well-stated: In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646(¶ 16) (Miss.Ct.App.2005). Furthermore, the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997).
¶ 9. Black argues that the State did not prove beyond a reasonable doubt that he was a felon in possession of a firearm or that he committed the armed robbery. However, Black admitted that the gun was his and a list of his felony convictions in Kentucky was included in the indictment. In regards to proving the armed robbery, there was sufficient evidence to do so. *108 Prior to the robbery, Black’s neighbors saw him with the gun, and the neighbors heard him say he needed the gun in case he needed rob someone. This particular gun was identified in the security video from the robbery by the neighbor, Black owned the jacket identified by the Subway employees as worn during the robbery, and the Subway employees recognized Black’s blue eyes from a photograph of him. Although Black claimed that Harbin committed the robbery and that Robert White saw Harbin near the Subway on the night of the robbery, the jury clearly found the State’s witnesses to be more credible. We find no merit to this issue.
II. DID THE TRIAL COURT ERR IN PERMITTING DETECTIVE ROAN TO TESTIFY REGARDING THE PHOTOGRAPHS?
¶ 10. In his second issue on appeal, Black argues that the trial court erred in permitting Detective Roan to testify regarding the photographs of Black and Harbin he showed to the Subway employees. After taking photographs of both Black and Harbin, Detective Roan then took these photos to the Subway for the two employees to review. The photographs were not introduced into evidence and only Diana made an in-court identification of Black.
¶ 11. In Thompson v. State, 483 So.2d 690, 692 (Miss.1986), our supreme court stated:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
¶ 12. “When there is no attempt to suppress the in-court identification by a pre-trial motion, and no contemporaneous objection is offered to the in-court identification, the issue is not preserved for appellate review except as an attack on the sufficiency of the evidence.” Brown v. State, 829 So.2d 93, 102(¶ 19) (Miss.2002); see also Gilmore v. State, 772 So.2d 1095, 1097(¶ 6) (Miss.Ct.App.2000). In the case sub judice, Black never sought the pretrial suppression of Diana’s testimony as an eyewitness nor offered any contemporaneous objection to Diana’s testimony. Black did cross-examine Diana at trial as to her view of the two photos and her recollection of the events in question. The jury heard and observed Diana’s testimony, clearly believing that Diana’s reaction to viewing the photograph of Black’s eyes was sufficient for identification purposes. This issue is without merit.
III. WAS THE JURY VERDICT AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 13. In his third issue on appeal, Black argues that the jury verdict was against the overwhelming weight of the evidence. In determining whether a jury verdict is against the overwhelming weight of the evidence the court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Herring v. State, 691 So.2d 948, 957 (Miss. 1997) (citing Thornhill v. State, 561 So.2d 1025, 1030 (Miss.1989)). The court will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice. Benson v. State, 551 So.2d 188, 193 (Miss.1989) (citing Groseclose v. *109 State, 440 So.2d 297, 300 (Miss.1983)). “Factual disputes are properly resolved by the jury and do not mandate a new trial.” Benson, 551 So.2d at 193 (citing Temple v. State, 498 So.2d 379, 382 (Miss.1986)).
¶ 14. In reviewing the available facts, as stated and reiterated supra, we cannot find that allowing the verdict to stand would sanction an unconscionable injustice. Black was identified as the perpetrator and admitted to owning the gun used in the robbery. This issue is without merit.
IV. DID THE TRIAL COURT ERR IN SENTENCING BLACK AS A HABITUAL OFFENDER IN LIGHT OF THE CONSTITUTIONAL PROHIBITION AGAINST CRUEL AND UNUSUAL PUNISHMENT?
¶ 15. In his fourth issue on appeal, Black argues that the trial court erred in sentencing him as a habitual offender in light of the constitutional prohibition against cruel and unusual punishment. Black claims that he was sentenced without an adequate presentencing hearing. However, the record reflects otherwise. Evidence of three prior convictions in Kentucky was produced via pen-pack. Black did not object to admitting the pen-pack into evidence.
¶ 16. The supreme court has previously ruled that sentencing under Mississippi’s habitual offender statute, Mississippi Code Annotated Section 99-19-81 (Rev.2000), does not violate the prohibition against cruel and unusual punishment. Sanders v. State, 678 So.2d 663, 669 (Miss.1996); Bridges v. State, 482 So.2d 1139, 1140 (Miss.1986). We find no merit to this issue.
¶ 17. THE JUDGMENT OF THE HANCOCK COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF THREE YEARS; COUNT II ARMED ROBBERY AND SENTENCE OF FORTY YEARS TO RUN CONCURRENTLY TO THE SENTENCE IN COUNT I, BOTH TO BE SERVED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HANCOCK COUNTY.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.