965 So.2d 725 (2007)
Willie WOODS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02372-COA.
Court of Appeals of Mississippi.
August 21, 2007.
*726 Eduardo Alberto Flechas, James D. Bell, Jackson, attorneys for appellant.
Office of the Attorney General by R. Stewart Smith, attorney for appellee.
Before MYERS, P.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. Willie Woods was convicted by a jury of four counts of Medicaid fraud and was sentenced by the Pike County Circuit Court to a total of twenty years, with eight years to serve and twelve years suspended.[1] Aggrieved, Woods appeals and contends that the court erred in issuing a supplemental instruction in response to a question from the jury during its deliberation, that the court erred in denying Woods's motions for a judgment notwithstanding the verdict and new trial, that the court erred in denying Woods bond pending appeal of his case, that the cumulative effect of the errors in his case mandate reversal, and that no reasonable juror could have found him guilty beyond a reasonable doubt. Finding that the court erred in failing to properly instruct the jury, we reverse and remand for a new trial consistent with this opinion.

FACTS
¶ 2. Woods was employed at Southwest Mental Health (Southwest) in Natchez, Mississippi, as an intensive case manager. Essentially, Woods provided services to a variety of clients who suffered from mental health issues and needed special care. For example, Woods would take clients to the doctor and help them with their day-to-day necessities. Evidence at trial indicated that Woods was particularly bad at keeping up with the paperwork that his *727 job entailed, and that he was often behind in filling out required documentation.
¶ 3. At particular issue in this case is Freddie Gates, who was a client of Southwest in 2001 and who suffered from admittedly severe mental issues. According to paperwork filed by Woods, Woods took Gates to Jackson for cancer treatments and to Fayette for arthritis problems. As a result of the filed paperwork, Southwest filed Medicaid claims for the services claimed by Woods. An investigation by the Attorney General's Medicaid Fraud Division revealed that on July 11, 2001, October 26, 2001, November 1, 2001, and November 29, 2001, four of the dates claimed by Southwest, no corresponding medical claims were filed by any health care providers. Woods was brought in for questioning, and was ultimately charged with four counts of Medicaid fraud for knowingly submitting false claims that were filed with Medicaid.
¶ 4. Evidence introduced at trial indicated that Gates was known to be a difficult patient. Gates admitted on the stand that he would sometimes tell Woods that he had seen a doctor when Woods took him places, even though he had not actually seen the doctor. There was also conflicting evidence regarding whether Gates had told Woods that he had cancer; on the stand, Gates maintained that he had told Woods and other individuals that he had cancer.
¶ 5. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Supplemental Jury Instruction
¶ 6. As stated, Woods argues that the trial court erred when it granted, over his objection, a supplemental instruction after jury deliberations had begun. As we will explain below, we find that the error lies not in the granting of the supplemental instruction, but in the granting of instructions which created confusion for the jury. During its deliberations, the jury sent a question to the court: "As to all Four Counts does # 1 mean any services or does `services' have to relate to the `services' claimed on all supporting documents." Before issuing a response, the court spoke to both the State and defense counsel about what response, if any, to give. Defense counsel urged the court to issue no response, as he contended that the jury had already been properly instructed. However, the court chose to issue the following written response to the jury: "You should consider all evidence as it relates to the dates of July 11, 2001, October 26, 2001, November 1, 2001 and November 29, 2001. Please keep this note with the jury instructions."
¶ 7. The jury's reference to "# 1" indicates that it was referring to instructions 6-9,[2] which read:
Willie Woods has been charged in Count No. 1 with the offense of Medicaid fraud which is alleged to have occurred between July 11, 2001 and November 29, 2001.
In order to prove this count, the prosecution must prove beyond a reasonable doubt each of the following elements of the charge:
That Willie Woods
1. Failed to provide case management services to Freddie Gates, on July 11, 2001;
2. Made, presented, or caused to be made or presented a claim for Medicaid *728 benefits related to such services, or alleged services; and
3. Knew the claim to be false, fictitious, or fraudulent.
If the prosecution proves beyond a reasonable doubt all of the above-listed elements, then you shall find Willie Woods guilty as charged as to this count.
If the prosecution fails to prove any or all of the above-listed elements beyond a reasonable doubt, then you must find Willie Woods "Not Guilty" as to this count.
(emphasis added). This instruction was tendered by Woods. A similar instruction tendered by the State was given to the jury as Instruction 10:
The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that during, between and/or about July 11, 2001, and November 29, 2001, the Defendant, Willie Woods, did wilfully, unlawfully and feloniously make, present and cause to be made and presented in Pike County, Mississippi, a false, fictitious and fraudulent claim for Medicaid benefits in the amount of or about Three Hundred and Fifty Dollars ($350.00), knowing the claim to be false, fictitious and fraudulent, in that the Defendant presented that on or about July 11, 2001, he had provided case management services related to cancer treatment in Jackson, Mississippi, for Freddie Gates, a Medicaid recipient, knowing at the time that the claim was submitted that the described services had not been provided, then you shall find the Defendant guilty of Medicaid fraud as charged in Count I.
The Court further instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that during, between and/or about October 26, 2001, and November 7, 2001, the Defendant, Willie Woods, did . . . in that the Defendant presented that on or about October 26, 2001, he had provided case management services related to cancer treatment in Jackson, Mississippi, for Freddie Gates, a Medicaid recipient, knowing at the time that the claim was submitted that the described services had not been provided, then you shall find the Defendant guilty of Medicaid fraud as charged in Count II.
The Court further instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that during, between and/or about November 1, 2001, and December 6, 2001, the Defendant, Willie Woods, did . . . in that the Defendant presented that on or about November 1, 2001, he had provided case management services related to treatment in Fayette, Mississippi, for the arthritic hand of Freddie Gates, a Medicaid recipient, knowing at the time that the claim was submitted that the described services had not been provided, then you shall find the Defendant guilty of Medicaid fraud as charged in Count III.
The Court further instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that during, between and/or about November 29, 2001, and December 6, 2001, the Defendant, Willie Woods, did . . . in that the Defendant presented that on or about November 29, 2001, he had provided case management services related to cancer treatment in Jackson, Mississippi, for Freddie Gates, a Medicaid recipient, knowing at the time that the claim was submitted that the described services had not been provided, then you shall find the Defendant guilty of Medicaid fraud as charged in Count IV.
(emphasis added).
¶ 8. A review of these instructions reveals that they are in direct conflict. Instructions *729 6-9 authorize the jury to find Woods not guilty if it finds that he provided any case management services on the dates in question, while the State's instruction specifies what types of services Woods was supposed to have rendered on those dates but does not apprise the jury if those services are case management services. There was evidence that Woods provided some case management services on the dates in question, although not the specific case management services indicated on the forms that he turned in to Southwest. It is apparent to this Court that the jury's question to the lower court was an attempt to discern which of these two instructions the jury was supposed to follow. Shortly after the court issued its supplemental instruction, the jury returned with a guilty verdict on all four counts.
¶ 9. According to Rule 3.10 of the Uniform Rules of Circuit and County Court:
If the jury, after they retire for deliberation, desires to be informed of any point of law, the court shall instruct the jury to reduce its question to writing and the court in its discretion, after affording the parties an opportunity to state their objections or assent, may grant additional written instructions in response to the jury's request.
The Mississippi Supreme Court has further clarified the procedure that trial courts are to follow after receiving a question from the jury: "Our first recommendation is that the circuit judge determine whether it is necessary to give any further instruction. Unless it is necessary to give another instruction for clarity or to cover an omission, it is necessary that no further instruction be given." Payton v. State, 897 So.2d 921, 955 (¶ 138) (Miss.2003) (quoting Girton v. State, 446 So.2d 570, 572 (Miss.1984)). We review the court's decision under an abuse of discretion standard. Mickell v. State, 735 So.2d 1031, 1033(¶ 7) (Miss.1999).
¶ 10. In this case, it was not necessary to give further instruction; rather, the court never should have allowed both Woods's instructions and the State's instruction. The fact that the jury appeared to be torn between whether it had to find that Woods failed to provide specific medical services or whether it could find that Woods simply provided services other than the ones contained in his logs indicates the severity of the confusion created by the granting of the two instructions. We note that Woods opposed the granting of the State's instruction, while the State interposed no objection to Woods's instructions.
¶ 11. Although it is presumed that the jury follows the instructions it is given, in this case it was impossible for the jury to follow all the instructions it was given, as the phrase "case management services" was never defined for the jury. "A circuit judge has a responsibility to see that the jury is properly instructed." Duvall v. State, 634 So.2d 524, 526 (Miss.1994) (citing Peterson v. State, 518 So.2d 632, 637-38 (1987)). Therefore, we reverse and remand for a new trial without improper jury instructions.
2. Sufficiency and Weight of the Evidence
¶ 12. Woods complains of both the denial of his motion for a judgment notwithstanding the verdict and the denial of his motion for a new trial. While the former challenges the sufficiency of the evidence convicting Woods, the latter challenges the weight of the evidence used to sustain the conviction. Hales v. State, 933 So.2d 962, 968 (¶¶ 20-21) (Miss.2006). Accordingly, we address each separately below.
*730 Sufficiency of the Evidence
¶ 13. The evidence supporting a conviction is sufficient if it "would support a verdict of guilty beyond reasonable doubt. . . ." Robinson v. State, 940 So.2d 235, 240(¶ 13) (Miss.2006) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). When determining if this is the case, we look at the evidence "in a light most favorable to the State." Id. at 239-40(¶ 13) (citing McClain, 625 So.2d at 778). Because we look at the evidence in the light most favorable to the State, we must "accept as true all evidence consistent with [Woods]' guilt, together with all favorable inferences that may be reasonably drawn from the evidence, and disregard the evidence favorable to the defendant." Id. at 240(¶ 13) (citations omitted).
¶ 14. After reviewing the evidence in this case, we find that the evidence was sufficient to sustain Woods's conviction. Regardless of the fact that we are reversing due to the improper and contradictory instructions given to the jury, had there been no conflicting jury instructions and no supplemental instruction issued by the court, we would affirm Woods's conviction. The evidence was clear that Woods claimed to have taken Gates to various health care facilities on the four dates in question, and yet the facilities had no record of ever having seen Gates. Furthermore, although Gates testified that he would sometimes tell Woods that he had seen a doctor when he had not, the records maintained by Woods indicate that he actually spoke with doctors on the dates in question and discussed Gates's health with them. In light of such evidence, we would find that a reasonable jury could reasonably find Woods guilty beyond a reasonable doubt.
Weight of the Evidence
¶ 15. "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Townsend v. State, 939 So.2d 796, 803(¶ 35) (Miss.2006) (quoting Bush v. State, 895 So.2d 836, 844(¶ 18) (Miss.2005)). A new trial based on the weight of the evidence should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. 803-04(¶ 35) (quoting Bush, 895 So.2d at 844(¶ 18)).
¶ 16. In the absence of the already-discussed conflicting jury instructions, allowing the verdict in this case to stand would not sanction an unconscionable injustice. The evidence presented in Woods's defense was (1) that he was behind in his record-keeping and may have accidentally falsified his records, (2) Gates's testimony that he may have lied to Woods about seeing doctors on the dates in question, (3) testimony of several witnesses who claimed that they saw Woods and Gates together on or around the relevant dates in the indictment, and (4) Woods's claims that there was no evidence regarding whether he intentionally falsified any records. As to all the points above, the jury heard all the evidence in this case and was entitled, as the fact-finder, to draw from it whatever conclusions it found most plausible. See Townsend, 939 So.2d at 802(¶ 27). Furthermore, points one and four are refuted by Woods's own handwritten records where he talks about speaking with Gates's doctors when, in fact, the evidence is clear that Gates did not see any doctors on the dates in the records. Taking all the evidence into account, allowing Gates's verdict to stand would not "sanction an unconscionable injustice," at least in the absence of improper jury instructions.
3. Denial of Appeal Bond
¶ 17. The relevant portion of Mississippi Code Annotated section 99-35-115(2) (Supp.2006) states:

*731 (a) A person convicted of any felony, not enumerated in subsection (1),[3] shall be entitled to be released from imprisonment on bail pending an appeal to the Supreme Court, within the discretion of a judicial officer, if the convict shows by clear and convincing evidence that release of the convict would not constitute a special danger to any other person or to the community, and that a condition or a combination of conditions may be placed on release that will reasonably assure the appearance of the convict as required, and only when the peculiar circumstances of the case render it proper.
(b) If bail is denied, the judicial officer shall place the reasons for such denial of record in the case.
(c) For the purposes of this section, "judicial officer" means the trial court or trial judge, a judge of the district in which the conviction occurred, the Supreme Court or a justice of the Supreme Court in vacation of the court.
(emphasis added). The statutory language clearly indicates that the decision whether to issue an appeal bond is at the trial court's discretion. In this case, the court provided in the record reasons for the denial. Here, the trial court found that, regardless of the fact that Woods was willing to be closely monitored, no amount of monitoring would be sufficient to convince the court that Woods posed no danger to himself or the community at large. The court specifically noted that Woods had been placed on suicide watch, which made the court believe that Woods posed a danger to himself. Rob Rushton, an investigator with the Attorney General's Medicaid Fraud Control unit, testified that Woods had said that he would shoot himself rather than go to jail. Furthermore, the court noted that it was concerned with letting Woods out on appeal bond because "in view of the area in which he lives, being in the hurricane Katrina disaster area, the fields are ripe for harvest for his expertise. . . . The situation is going to be a gold mine to folks that wish to practice fraud."
¶ 18. After reviewing the reasons given by the court, we cannot say that the court abused its discretion in denying appeal bond to Woods.
4. Cumulative Error
¶ 19. This issue is moot, as we have found reversible error.
5. Reasonable Juror
¶ 20. Woods's contention in this issue, that no reasonable juror could have found him guilty beyond a reasonable doubt, has already been addressed in our section detailing the weight and sufficiency of the evidence.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF FOUR COUNTS OF MEDICAID FRAUD AND SENTENCE OF FIVE YEARS ON EACH COUNT TO RUN CONSECUTIVELY, WITH TWO YEARS TO SERVE ON EACH COUNT AND THREE YEARS SUSPENDED ON EACH COUNT, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
*732 LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY.
NOTES
[1] Woods was sentenced to five years on each count, with two years to serve on each count and three years suspended from each count. Furthermore, the court ordered that the first five years of Woods's post-release supervision is to be served on a reporting, supervised basis, while the remaining seven years are to be served on a non-reporting, unsupervised basis.
[2] The quoted language is from Instruction 6. The other instructions were identically worded and merely contained the other three dates referenced in the indictment.
[3] Subsection (1) relates to serious offenses, such as those related to children or that involve a sentence of death or life imprisonment. Therefore, subsection (1) does not apply to Woods.