991 So.2d 179 (2008)
Jerome BASKIN a/k/a Lil Red Coot, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-01387-COA.
Court of Appeals of Mississippi.
September 9, 2008.
*180 W. Daniel Hinchcliff, Leslie S. Lee, William C. Stennett, attorneys for appellant.
Office of the Attorney General by Stephanie Breland Wood, attorney for appellee.
Before KING, C.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Jerome Baskin was convicted in the Circuit Court of Clay County of one count of sale of cocaine, for which he was sentenced to serve thirty years in the custody of the Mississippi Department of Corrections as a subsequent offender. On a second count of sale of cocaine, the jury could not return a verdict, and the circuit court granted a mistrial. Baskin now appeals his conviction and asserts four points of error:
I. The circuit court committed plain error by allowing the prosecutor to define reasonable doubt.
II. The circuit court committed plain error by failing to declare a mistrial when prospective jurors were brought into the courtroom while Baskin was in leg irons.
III. Baskin's right to a fair trial was prejudiced by the multiple incidents of prosecutorial misconduct.
IV. Reversal is warranted because of cumulative error.
¶ 2. Finding Baskin's allegations of error to be procedurally barred or without merit, we affirm his conviction and sentence.

FACTS
¶ 3. On June 18, 2004, a confidential informant, Bobby Gaston, met with Agent Treddis Anderson and Agent Andrew Cotton of the Mississippi Bureau of Narcotics to prepare for a drug purchase. The agents searched Gaston and his vehicle for drugs, and they fitted him with a microphone and a camera. That same afternoon, the agents gave Gaston $20 for the buy and sent him to Tom Bayne Street in West Point, Mississippi  an area known for its drug activity.
¶ 4. Agents Anderson and Cotton followed behind Gaston, and they monitored the situation. Gaston was initially approached by an unknown male, and Gaston informed him that he wanted to buy a "$20 stone." Baskin then approached the two men and informed Gaston that "he's got this." The unknown man walked away, and Gaston purchased a 0.22 gram rock of cocaine from Baskin. Gaston put the rock in a bag given to him by the agents, and he returned it to them. Later that same afternoon, Gaston made another buy from Baskin. The second time he bought a 0.23 gram rock of cocaine, which he also turned over to the agents.
*181 ¶ 5. Baskin was arrested and indicted for two counts of selling cocaine. At trial, Gaston testified that Baskin was the person who sold him the $20 rock of cocaine. Gaston said he had known Baskin for a few years, and he knew him as "Coot." Gaston also confirmed that he returned to the area and made a second purchase from Baskin. Additionally, the State presented the videotape of the transaction that was made by the video camera that Gaston wore that day. On the videotape, Gaston identified Baskin, and he explained what was happening as the tape played, specifically, Baskin reaching into a bag of drugs and selling Gaston a $20 rock of cocaine.
¶ 6. The State also called Agent Anderson to testify, and Brandy Goodman, of the Mississippi Crime Laboratory, also testified that the substance bought from Baskin was cocaine. Baskin testified in his own defense. He admitted that the man on the videotape looked like him, but he denied selling drugs to Gaston.
¶ 7. The jury convicted Baskin of the first count of sale of cocaine, and the circuit court sentenced him as a subsequent offender to thirty years in the custody of the Mississippi Department of Corrections, with five years of post-release supervision. On the second count of sale of cocaine, the jury was unable to return a verdict, and the circuit court declared a mistrial.

ANALYSIS OF THE ISSUES

I. Whether the circuit court committed plain error in allowing the prosecutor to define reasonable doubt.
¶ 8. To begin, Baskin argues that the prosecutor impermissibly attempted to define reasonable doubt during the State's closing argument in violation of Baskin's substantive rights. Baskin admits that the defense did not make a contemporaneous objection regarding this issue, and it was not addressed by the circuit court. Nevertheless, Baskin urges us to review this issue under the plain-error doctrine and to reverse his conviction.
¶ 9. Rule 103(d) of the Mississippi Rules of Evidence allows a court to take notice of any plain error affecting a substantial right even though it was not brought to the court's attention. In addressing the issue of plain error, the supreme court has said the following:
If no contemporaneous objection is made at trial, a party must rely on the plain error rule to raise the assignment of error on appeal. Foster v. State, 639 So.2d 1263, 1289 (Miss.1994) (citing Gray v. State, 487 So.2d 1304, 1312 (Miss.1986)). "The plain error doctrine requires that there be an error and that the error must have resulted in a manifest miscarriage of justice." Williams v. State, 794 So.2d 181, 187 (Miss.2001) (citing Gray v. State, 549 So.2d 1316, 1321 (Miss.1989)). The plain error rule will only be applied when a defendant's substantive or fundamental rights are affected. Grubb v. State, 584 So.2d 786, 789 (Miss.1991).
Flora v. State, 925 So.2d 797, 811(¶ 42) (Miss.2006).
¶ 10. The passage from the State's closing argument with which Baskin now takes issue reads as follows:
Ladies and gentlemen, in the unlikely event, in this day, that you went to bed at night and you woke up the next morning and snow was all over the ground outside the house, you might conclude any one of a number of things. You might conclude[ ] that a bunch of elves from the North Pole left over from Christmas flew over in a helicopter and dumped snow in your front yard.
You might conclude that they that they [sic] came down, somebody, with a snowmaking *182 machine and made a bunch of snow and blew it out there in the front yard for you. Or you might conclude that while you were sleeping, it snowed. You would probably conclude, ladies and gentlemen, that while you were sleeping it snowed, because that's the reasonable thing to do. Ladies and gentlemen, that's what this reasonable doubt thing is all about.
When Mr. Stennett gets up here and starts talking about reasonable doubt, that's what you're talking about. You don't have to believe those other two things, ladies and gentlemen, because they're too incredible to believe. It doesn't make sense. It's not reasonable.
The prosecutor's explanation came in rebuttal after the defense argued during its closing argument that the State had not proved its case beyond a reasonable doubt. It also followed the prosecutor's previous argument in which he stated the following:
Once again, ladies and gentlemen, what is the reasonable inference about what's going on out there? Because it's a seamless whole, ladies and gentlemen. Bobby Gaston has told you what was going on out there. Ladies and gentlemen, that's what this proof of beyond a reasonable doubt is all about. That's what we mean. It's not proof beyond any doubt. It's not proof beyond all doubt. It's not proof beyond a doubt, but beyond a reasonable doubt.
We have held that during closing arguments, it is permissible for counsel to discuss the distinction between reasonable doubt, all possible doubt, and beyond a shadow of a doubt. Stigall v. State, 869 So.2d 410, 413(¶ 11) (Miss.Ct.App.2003) (citing Heidelberg v. State, 584 So.2d 393, 396 (Miss.1991)).
¶ 11. The circuit court properly gave the jury an instruction informing them that the arguments made by counsel were not evidence and were only intended to help the jury members understand the evidence and apply the law. In considering the above-quoted passages, we find no error with the prosecutor's comments. Even if the comments were objectionable, similar to Stigall, we do not find that they rose to the level of "prejudicial proportions." Id. at 414(¶ 11).
¶ 12. Ultimately, we are procedurally barred from reviewing this issue because Baskin did not raise it at the trial level. Stigall, 869 So.2d at 413(¶ 9) (citing Mack v. State, 650 So.2d 1289, 1320 (Miss.1994)). Alternatively, we find that the prosecutor's comments did not result in a manifest miscarriage of justice as required under the plain-error doctrine. Baskin's argument is, therefore, without merit.

II. Whether the circuit court committed plain error in failing to declare a mistrial when prospective jurors were brought into the courtroom while Baskin was shackled.
¶ 13. Baskin's second point of error relates to the fact that his leg irons remained on him when prospective jurors were brought into the courtroom. He argues that the circuit court should have declared a mistrial because the prospective jurors had the opportunity to witness him in shackles. Again, Baskin concedes that defense counsel did not make a contemporaneous objection and that this issue was not presented to the circuit court.
¶ 14. Baskin argues that according to the case of Smith v. State, 877 So.2d 369, 379(¶ 16) (Miss.2004), he is not procedurally barred from raising on direct appeal the issue of him being shackled in front of the jurors. Nevertheless, the supreme court has stated that "[a] brief and inadvertent exposure to jurors of defendants in handcuffs is not so inherently prejudicial as to *183 require a mistrial, and defendants bear the burden of affirmatively demonstrating prejudice." Hughes v. State, 892 So.2d 203, 216(¶ 42) (Miss.2004) (citing United States v. Diecidue, 603 F.2d 535, 549 (5th Cir.1979)).
¶ 15. In this case, the judge only noticed that Baskin was wearing leg irons when he stood up to be introduced to prospective jurors. At that time, and without explanation, the judge asked the prospective jurors to leave the courtroom. After all prospective jurors had departed, the judge ordered Baskin's shackles to be removed. There was no evidence that any of the prospective jurors saw Baskin in shackles, and there was no evidence of any prejudice to Baskin. His defense counsel even admitted that he did not notice that Baskin had on leg irons. The judge also pointed out that Baskin was seated in a position in which the prospective jurors could not see the leg irons because there was a bar blocking their view of him.
¶ 16. We find no error with the judge's decision not to grant a mistrial. As soon as he noticed the shackles, he resolved the issue, and there was no evidence of prejudice. This issue is without merit.

III. Whether Baskin's right to a fair trial was prejudiced by prosecutorial misconduct.
¶ 17. Next, Baskin takes issue with comments made by the prosecutor, which Baskin alleges constituted prosecutorial misconduct. Baskin argues that the prosecutor's comments deprived him of a fair trial. There were three specific comments made by the prosecutor that Baskin argues constitute reversible error.
¶ 18. Again, we note that failure to object to an allegedly improper statement made during closing arguments will bar appellate review of the issue unless it constitutes plain error. Stubbs v. State, 878 So.2d 130, 136(¶ 16) (Miss.Ct.App.2004) (quoting Watts v. State, 733 So.2d 214, 233(¶ 53) (Miss.1999) (overruled on other grounds)). Furthermore, an attorney is granted broad latitude in making closing arguments. Id. at (¶ 17).
¶ 19. The first comment, made during voir dire, was the following: "Do any of you believe, ladies and gentlemen, that Clay County, Mississippi does not have a drug problem? If so, raise your hand." The second comment was made during the State's closing argument. The prosecutor said, "Ladies and gentlemen, it's your community. You live here." Lastly, Baskin claims that the prosecutor mentioned during closing arguments that Gaston "would possibly be executed for testifying." As far as the third allegation, there was no such statement. The relevant portion of the State's closing argument is as follows:
And you're told, ladies and gentlemen, that well, [Mr. Gaston is] being paid and if he doesn't make any money and if he doesn't buy anything that he doesn't make anything. Well, ladies and gentlemen, you know, we call them snitches and we call them other names. And we think of them in derogatory terms. But whatever else you call them and whatever else you want to name them, after somebody gets indicted, their name gets put in an indictment. And everybody and his big brother knows that Bobby Gaston has been buying drugs for the Bureau of Narcotics. And their life gets real interesting at that point, because people tend to take it personally when you try to put them in jail.
And if you don't think they get threatened and if you don't think that they sometimes get killed and if you don't think they sometimes get injured, then you're living in an opium dream, because it happens.

*184 So, yeah, they get paid. You ought to give them something, because what they're doing is hazard[ous] and they deserve to get paid to do it.
¶ 20. Defense counsel made no objection to this argument from the State; therefore, it is procedurally barred. Furthermore, it is apparent that the State was attempting to refute the defense's insinuation that because Gaston was getting paid, his testimony was not reliable. The prosecutor made no allegation that Baskin was in any way trying to influence Gaston's testimony or that he was trying to dissuade Gaston from testifying.
¶ 21. Regarding the community comment, Baskin argues that this was a "send-a-message" comment by the prosecutor, which the supreme court has cautioned against. See Wells v. State, 698 So.2d 497, 513 (Miss.1997). In Wells, the supreme court restated that it did not think that such an error alone would warrant reversal. Id. (quoting Williams v. State, 522 So.2d 201, 209 (Miss.1988)).
¶ 22. In the present case, defense counsel made an objection immediately after the prosecutor said, "Ladies and gentlemen, it's your community. You live here." In response, the judge told the prosecutor to move along. The prosecutor did move on, and he made no further mention of the community. Based on that comment alone, we do not find that the judge should have ordered a mistrial. Accordingly, we do not find that Baskin's conviction warrants reversal, especially in light of the overwhelming evidence of his guilt, which included the testimony of Gaston and the videotape of the purchase.
¶ 23. As for the State's voir dire question, a "send-a-message" question may also be improper during voir dire. Watkins v. State, 874 So.2d 486, 491(¶ 28) (Miss.Ct.App.2004) (citing Bigner v. State, 822 So.2d 342, 352(¶ 45) (Miss.Ct.App. 2002)). However, the defense did not make a contemporaneous objection following the statement; therefore, Baskin is procedurally barred from raising the issue on appeal. Furthermore, the prosecutor's question was part of a line of questioning to determine the jurors' views concerning the drug problem in Clay County. We perceive no error in such a question.
¶ 24. We find no evidence of prosecutorial misconduct. Baskin's allegations to the contrary are procedurally barred and also without merit.

IV. Whether cumulative error requires reversal.
¶ 25. Lastly, Baskin argues that even if the errors he has alleged are not sufficient to warrant reversal taken alone, this Court should reverse based on their cumulative effect.
¶ 26. With such an allegation of cumulative error, the issue is whether the effect of any errors taken cumulatively "deprived the defendant of a fundamentally fair and impartial trial." Walker v. State, 913 So.2d 198, 249 (¶ 205) (Miss. 2005) (citing Conner v. State, 632 So.2d 1239, 1278 (Miss.1993) (overruled on other grounds)). In considering this issue, we note that "[a] criminal defendant is not entitled to a perfect trial, only a fair trial." Id. at (¶ 206) (quoting McGilberry v. State, 741 So.2d 894, 924 (¶ 126) (Miss.1999)). Furthermore, as the State points out, if there was no error, harmless or otherwise, then there can be no cumulative error. Poindexter v. State, 856 So.2d 296, 303(¶ 31) (Miss.2003).
¶ 27. Among the issues brought before this Court, we find no error. None of the alleged errors cited by Baskin deprived him of a fundamentally fair trial. Furthermore, in light of the overwhelming weight of the evidence of Baskin's guilt, we *185 find that any of the issues that possibly could have constituted error were harmless and do not warrant reversal when taken cumulatively.
¶ 28. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY OF CONVICTION OF COUNT I, SALE OF COCAINE, AND SENTENCE OF THIRTY YEARS AS A SUBSEQUENT OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE YEARS OF POST-RELEASE SUPERVISION, AND A FINE OF $10,000, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.