IRVING, J.,
for the court.
¶ 1. James Kendrick was convicted by a jury in the Sunflower County Circuit Court of aggravated assault. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections, with this sentence to run consecutively to his sentence in Rankin County cause number 12,620. Aggrieved, he appeals and asserts: (1) that the verdict against him is not supported by substantial evidence, (2) that the trial court erred in allowing lay testimony regarding medical opinions, and (3) that the trial court erred in allowing the jury to be presented with conflicting jury instructions.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On August 21, 2006, Derwin Boze-man was stabbed in the neck while incarcerated at the Mississippi State Penitentiary in Parchman, Mississippi. The stabbing occurred as he walked down a corridor in Unit 32. After visiting the prison hospital, Bozeman was transported to a nearby hospital. Kendrick, also an inmate at Parchman, was later arrested and charged with aggravated assault for the attack against Bozeman. The Sunflower County Circuit Court heard the matter on July 2, 2007.
¶ 4. Bozeman testified that he has only “heard” who had stabbed him and does not know for certain who is responsible. As for his injuries, he stated that the nerves in his tongue and vocal cord are “messed up” and that his tongue “stays to one side.”
¶ 5. Johnny Ware, the administrator for the Electronic Surveillance Operation Center (ESOC) at Parchman, testified as to what the surveillance video taken the day of the incident reveals. Ware explained that offenders in Unit 32 are housed in single cells. He also stated that the cameras are positioned to record the corridor between the cells but are unable to record the inside of the cells. Further, Ware *1189 explained the process by which prison officials, when reviewing surveillance video, are able to determine in which cell an inmate is housed. According to Ware, the floor in Unit 32 is gray and has white blocks located in front of each cell door. He testified that prison officials count the number of white blocks in order to determine where an inmate is housed.
¶ 6. The jury viewed the surveillance video of the incident as Ware explained what was captured on the video. Ware testified that the video depicts a crutch with a sharp object attached to the end of it being stuck out of a cell and striking Bozeman as he walked down the corridor. According to Ware, the video also shows a spear-like object with a white towel or sheet draped over it being passed from cell fifty-seven to cell fifty-six immediately following the stabbing. Ware testified that, at the time of the incident, Kendrick was housed in cell fifty-seven and Reginald Sims was housed in cell fifty-six. Officers performed a shakedown[1] of Kendrick’s and Sims’s cells shortly after the stabbing. Ware stated that two aluminum crutches[2] were recovered from Kendrick’s cell and that a shank was recovered from Sims’s cell.[3]
¶ 7. Fred Moore, an escort lieutenant at Parchman, testified that he assisted in the search of Sims’s cell and recovered a shank that had what appeared to be blood on it.
¶ 8. As noted, the jury returned a guilty verdict.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Sufficiency of the Evidence

¶ 9. In his first issue, Kendrick argues that there is insufficient evidence to support the verdict against him. Our familiar standard of review as it relates to a sufficiency-of-evidence claim is as follows:
Should the facts and inferences considered in a challenge to the sufficiency of the evidence [“]point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty,[”] the proper remedy is for the appellate court to reverse and render. Edwards v. State, 469 So.2d 68, 70 (Miss.1985) (citing May v. State, 460 So.2d 778, 781 (Miss.1984)); see also Dy-cus v. State, 875 So.2d 140, 164 (Miss. 2004). However, if a review of the evidence reveals that it is of such quality and weight that, “having in mind the beyond a reasonable doubt burden of proof standard, reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense,” the evidence will be deemed to have been sufficient. Edwards, 469 So.2d at 70.... When reviewing a case for sufficiency of the evidence, the relevant question is whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” [Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) ] (quoting Jackson *1190 v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979)).
Brown v. State, 965 So.2d 1023, 1030 (¶¶ 25-26) (Miss.2007).
¶ 10. Kendrick contends that the evidence offered in support of his conviction is insufficient and asserts several reasons to support his contention. First, Kendrick claims that because Bozeman was unable to identify which cell the shank came from, the prosecution was forced to rely on “grainy video evidence.” Kendrick further asserts that Ware incorrectly suggested that his cell was identified as the cell from which the shank originated because cell numbers are visible on tiles located in front of each cell. We conclude that Kendrick mischaracterizes Ware’s testimony. The record reveals that Ware stated the following regarding the system for determining which inmate is housed in a certain cell:
Q. Is there any type of — anything that would indicate to someone on the hall how many cells and what the cell numbers were on that hall?
A. Yes. On the center partition that I was talking about is labeled — you have a label in the middle that says 51 through 60, and then you have an arrow letting you know that the first cell is gonna be 50[sic], and the last one is 60. And it’s gonna do the same on the opposite side. And the way you count is you have cells to the left, and right there on that— across right — across from the cell, you’ll have maybe a 12-inch block that’s painted that you can count the cells down because you’re not looking directly into the cells, so you have to have some way of counting which cell number. And then if there is a question—
Q. I’m gonna stop you because you said you’re not looking directly into the cell. What do you mean by that?
A. Imagine looking down a hallway, and the cells are — you have to do in, and you have to — you can’t see directly into the cells.
Q. You mean by camera?
A. Yeah, by the position of the cameras.
Q. Okay. And so you were saying there are these white blocks. Where are the white blocks located?
A. They’re on the floor right across from each cell door.
Q. What color is the floor?
A. The floor is gray.
Q. And so the white blocks, tell me again, are where?
A. Right across from the cell to identify where the cell is located.
Q. And is there a block in front of each cell?
A. There is one.
Q. Okay. And tell us the purpose of those white blocks?
A. The purpose of the white blocks is to help ESOC identify which— where the cells are located.
Q. And when a particular incident occurs, does ESOC in any way capture that image?
A. We do.
¶ 11. Based on the exchange reflected above, we conclude, despite Kendrick’s assertions to the contrary, that reasonable jurors could have found that Kendrick stabbed Bozeman as Bozeman walked past Kendrick’s cell. As stated, the jury watched the video and heard Ware explain what the video depicts. This contention lacks merit.
¶ 12. Second, Kendrick argues that insufficient evidence exists to support *1191 the verdict against him because it was not established by medical evidence that Boze-man suffered a serious injury. Mississippi Code Annotated section 97-3-7(2)(b) (Supp.2009), provides, in part, that: “(2) A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]” There is nothing in section 97-3-7(2)(b) that requires the State to prove by medical evidence that Bozeman suffered a bodily injury. Rather, all that is required is a showing that Kendrick knowingly caused, or attempted to cause, Bozeman to suffer bodily injury with a deadly weapon or any other means likely to cause death or serious bodily injury.
¶ 13. It is entirely likely that reasonable jurors concluded that the act of attaching a homemade knife to the end of a crutch and then extending the crutch in the vicinity of a person’s head and neck as he walked down a corridor constitutes an attempt at causing bodily injury with a weapon likely to cause serious bodily injury. As stated, Bozeman was stabbed in the neck and, as a result, has problems with his tongue and vocal cords. Accordingly, we find no merit to this contention.
¶ 14. Third, Kendrick asserts that the State failed to prove that he used a dangerous weapon in the attack and cites Gilmore v. State, 772 So.2d 1095 (Miss.Ct. App.2000) as support for his contention. In Gilmore, Leon Sacks was stabbed in the leg by an unknown instrument while he attempted to resist a robbery. Id. at 1099(¶ 10). The issue before the Gilmore court was:
whether Sacks’s sensation of feeling a sudden sharp pain in his leg, together with proof that he did, in fact, receive some sort of puncture wound, was enough to support a finding that a deadly weapon was exhibited in a way that put Sacks in fear of further immediate injury to his person.
Id. at 1098(¶ 9). In reaching our holding, this Court stated the following:
The problem in this case, however, is that there simply is no evidence to suggest what instrumentality produced the puncture wound on Saclcs’s leg. The wound occurred during the course of a struggle outside in the dark and could, with equal probability, have been produced from a stick or other instrumentality that was already there as by a weapon of some description wielded by one of the assailants. That Sacks was purposely stabbed in the leg with a device brought to the scene by one of the assailants for the purpose of either (a) persuading Sacks of the folly of resistance, or (b) actually inflicting an injury should he fail to yield to the persuasive power of the instrument, is a possibility, but nothing more. Criminal convictions cannot be sustained upon mere possibilities. Westbrook v. State, 202 Miss. 426, 32 So.2d 251, 252 (1947).
Id. at 1099(¶ 10) (emphasis added).
¶ 15. We find Gilmore distinguishable from the facts in our case because it is clear that a deadly weapon caused Boze-man’s injury. As stated, a homemade knife was recovered from Sims’s cell, which was in close proximity to Kendrick’s cell. Further, the evidence establishes that Kendrick used a towel to pass the knife from his cell to Sims’s cell. Thus, the evidence clearly supports a finding that Kendrick used a deadly weapon in the attack against Bozeman. This issue lacks merit.

2. Medical Testimony

¶ 16. Kendrick also contends that the trial court erred in allowing Kory *1192 Hamilton, an investigator with the Mississippi Department of Corrections, to provide “expert” testimony regarding the injury that Bozeman sustained as a result of the stabbing. Hamilton testified that, as a part of his investigation, he interviewed Bozeman shortly after the incident and reviewed Bozeman’s medical records. Hamilton testified that he did not speak to any medical personnel. Hamilton attempted to testify regarding the nature of Bozeman’s injuries; however, the defense objected. The trial court instructed Hamilton to limit his testimony to lay terms and to only testify concerning information that he had learned during his investigation. The trial court further instructed Hamilton to refrain from making medical diagnoses or conclusions. Then, Hamilton testified that, during the interview, Boze-man complained that he had trouble speaking and problems with his tongue. Specifically, Hamilton stated that he observed that one side of Bozeman’s tongue appeared to be paralyzed.
¶ 17. Rule 701 of the Mississippi Rules of Evidence provides that:
If the witness is not testifying as an expert, the witness’s testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
In contrast, Rule 702 of the Mississippi Rules of Evidence reads as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
We find no error in the trial court’s allowing Hamilton’s testimony regarding Boze-man’s injuries. It is clear that Hamilton’s testimony was opinion testimony, rather than expert testimony, as he simply testified about what he perceived Bozeman’s injuries to be after speaking with Boze-man. Furthermore, the testimony was not based on scientific, technical, or specialized knowledge. There is no merit to this issue.

3. Circumstantial Evidence

¶ 18. In his final issue, Kendrick argues that the trial court erred in refusing to modify jury instructions D-l and S-l because they do not contain circumstantial evidence language. “A circumstantial evidence case is one where the State is ‘without a confession and wholly without eyewitnesses to the gravamen of the offense charged.’ ” Garrett v. State, 921 So.2d 288, 291(1117) (Miss.2006) (quoting Kniep v. State, 525 So.2d 385, 392 (Miss. 1988)). Further, it is well settled that:
When considering a challenge to a jury instruction on appeal, [appellate courts] do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed. Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993). Similarly, [the Mississippi Supreme Court] has stated that “in determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case *1193 and create no injustice, no reversible error will be found.” Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (quoting Collins v. State, 691 So.2d 918 (Miss. 1997)). In other words, if all instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.
Smith v. State, 835 So.2d 927, 934(¶23) (Miss.2002) (quoting Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001)). “The defendant is not entitled to a circumstantial evidence instruction where both circumstantial and direct evidence are admitted at trial.” Garrett, 921 So.2d at 292(¶ 17) (citing Gilleylen v. State, 255 So.2d 661, 663-64 (Miss.1971)).
¶ 19. Kendrick’s attorney asked the trial judge to allow her to modify instruction D-l because it did not contain circumstantial evidence language that the State must prove Kendrick guilty beyond a reasonable doubt and to the exclusion of all reasonable hypotheses consistent with innocence. In situations where the State’s case is based wholly upon circumstantial evidence, the State is required to prove the defendant guilty beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Johnson v. State, 999 So.2d 360, 367(¶ 29) (Miss.2008) (citing- Hughes v. State, 983 So.2d 270, 278(¶ 26) (Miss.2008)). The trial judge concluded that no modification was necessary because circumstantial evidence language was already included in instruction C-CR-9, which was offered by the trial court.
¶ 20. While we acknowledge that our jurisprudence instructs that when a case consists wholly of circumstantial evidence, the jury should be given a circumstantial evidence instruction, we also agree with Justice Robertson’s concurring opinion in Montgomery v. State, 515 So.2d 845 (Miss. 1987) wherein he discussed the appropriate standard of proof in criminal cases. There, he argued that the “correct standard to be applied in ... all ... criminal cases is, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. at 849 (Robertson, J., concurring). Further, Justice Robertson stated that:
I ... believe that the circumstantial evidence rule and the perception upon which it is based is really much ado about nothing. It is simply redundant— repetitious, if you will — to say that an accused’s guilt must be established, (1) beyond a reasonable doubt and (2) to the exclusion of every reasonable hypothesis consistent with innocence. These are two ways of saying the same thing, borne no doubt of the familiar lawyers’ penchant for never using one word when two or three will do just as well. If an accused’s guilt is established to the exclusion of every reasonable hypothesis consistent with innocence, then it may be said that he has been found guilty beyond a reasonable doubt. Conversely, if the evidence has not [been] excluded from the juror’s mind a reasonable hypothesis consistent with innocence, it follows that the prosecution has not established guilt beyond a reasonable doubt.
Id. at 851.
¶ 21. Although, as stated, we agree with Justice Robertson that one standard should be applied in all criminal cases whether direct or circumstantial, we are cognizant of the fact that Justice Robertson’s position has yet to be adopted. Therefore, we proceed with our analysis of whether the trial judge allowed conflicting jury instructions to be presented to the jury at Kendrick’s trial.
¶ 22. Kendrick argues that the trial judge committed reversible error, *1194 based on his assertion that instructions D-1, S-l, and C-CR-9 are in “hopeless conflict.” Kendrick directs our attention to Woods v. State, 965 So.2d 725 (Miss.Ct. App.2007) and Johnson v. State, 908 So.2d 758 (Miss.2005) as support for his argument.
¶ 28. In Woods, Willie Woods was indicted and chai'ged with four counts of Medicaid fraud for knowingly submitting false claims. Woods, 965 So.2d at 727(¶ 3). During his trial, after the jury had begun its deliberations, it sent the following question to the court: “As to all Four Counts does # 1 mean any services or does ‘services’ have to relate to the ‘services’ claimed on all supporting documents.” Id. at (¶ 6). This Court, finding that the trial court erred in giving confusing and conflicting instructions, reversed Woods’s conviction and remanded the case for a new trial. Id. at 726-27, 728 (¶¶ 1, 6, 8). We explained our holding as follows:
A review of these instructions reveals that they are in direct conflict. Instructions 6-9 authorize the jury to find Woods not guilty if it finds that he provided any case management services on the dates in question, while the State’s instruction specifies what types of services Woods was supposed to have rendered on those dates but does not apprise the jury if those services are case management services. There was evidence that Woods provided some case management services on the dates in question, although not the specific case management services indicated on the forms that he turned in to Southwest. It is apparent to this Court that the jury’s question to the lower court was an attempt to discern which of these two instructions the jury was supposed to follow. Shortly after the court issued its supplemental instruction, the jury returned with a guilty verdict on all four counts.
Id. at 728-29(¶ 8). We further held that “it was impossible for the jury to follow all the instructions it was given, as the phrase ‘case management services’ was never defined for the jury.” Id. at 729(¶ 11).
¶ 24. Here, instruction D-l reads:
The Court instructs the jury that if you believe that the State has failed to prove beyond a reasonable doubt that JAMES KENDRICK, purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life caused or attempted to cause serious bodily injury to Derwin Bozeman by stabbing him with a homemade knife commonly called a “spear,” then you should return a verdict of not guilty.
S-l reads:
The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that on the date testified about, the Defendant, JAMES KENDRICK, did unlawfully, willfully and feloniously cause or attempt to cause bodily injury to Derwin Bozeman by stabbing him with a homemade knife commonly called a “spear,” a deadly weapon, then it is your sworn duty to find Defendant, JAMES KENDRICK, guilty as charged.
C-CR-9 reads:
The mere fact that a person has been charged with a crime and has been indicted by a grand jury is no indication whatever [sic] that he is guilty of the crime. In fact, the law presumes every person charged with the commission of a crime to be innocent at the outset of the trial. This presumption of innocence stays with the Defendant and prevails unless, and until, it is overcome by evidence which satisfies you of the Defendant’s guilt beyond a reasonable doubt *1195 and to the exclusion of every reasonable hypothesis consistent with innocence.
We find Woods distinguishable from the facts in our case, as we conclude that the instructions offered at Kendrick’s trial are not in conflict. Instructions D-l and S-l are virtually identical, and even though neither included circumstantial evidence language, the court's instruction, C-CR-9, informed the jury of the circumstantial evidence standard. The jury was instructed to read D-l, S-l, and C-CR-9 together. Therefore, we fail to see how Woods supports Kendrick’s position.
¶ 25. In Johnson, our supreme court reversed Ardes Johnson’s conviction and remanded his case to the Bolivar County Circuit Court for a new trial after finding that jury instruction S-4 misstated the law and, as a result, confused the jury. Johnson, 908 So.2d at 764(¶ 22). Kendrick’s reliance on Johnson is misplaced, because there is no allegation in this case that the jury instructions misstated the law. The Johnson court held that instruction S-4 was contradictory and did not state the applicable law regarding claims of self-defense “because one acting in self-defense does not act at his own peril.” Id. Since neither Woods nor Johnson provides any support for Kendrick, it necessarily follows that this issue lacks merit.
¶ 26. We conclude that the jury instructions, when taken as a whole, fairly and correctly informed the jury of the applicable law. We also find the evidence sufficient to support Kendrick’s conviction. Therefore, we affirm both his conviction and sentence.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF SUNFLOWER COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIS SENTENCE TO RUN CONSECUTIVELY TO THE SENTENCE IN RANKIN COUNTY CAUSE NUMBER 12,620, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO SUNFLOWER COUNTY.
KING, C.J., LEE AND MYERS, P.JJ, GRIFFIS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT.

.Ware testified that a shakedown is when officers go into a cell and physically remove an inmate. The inmate is then placed in handcuffs and is allowed to watch as the officers search the cell for any items that inmates are prohibited from having in their possession.

. Kendrick was using crutches for a foot injury.

. Although Ware stated that a shank was recovered from Sims’s cell, it is clear that he is referring to the same spear-like object that was attached to the end of the crutch.