ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Charles Anderson was convicted of manslaughter. The Circuit Court of Lamar County sentenced him to twenty years in the custody of the Mississippi Department of Corrections (MDOC). He now appeals and asserts: (1) the trial court erred in granting the State’s jury instruction S-7, and (2) the “castle doctrine” should be applied retroactively to his case. Finding no error, we affirm Anderson’s conviction and sentence.
 

 FACTS
 

 ¶ 2. On the night of April 19, 2003, Anderson was asleep at his home when he was woken up and discovered Shelton Smith standing in his hallway. According to Anderson, Smith yelled expletives at him and told him to die. Smith then lit a match and set Anderson’s house on fire. Anderson then ran back into his bedroom, grabbed a shotgun, and climbed out of his window. Anderson shot Smith and ran across the street to the home of his brother-in-law, Owen Stockstill, where he collapsed on the front porch. According to Stockstill, Anderson was out of breath and told him: “Shelton was trying to burn his house down and I shot him.”
 

 ¶ 3. Stockstill, along with his daughter,
 
 *837
 
 Megan Stockstill, and her boyfriend, Trey
 
 [1]
 
 , returned to Anderson’s home to find Shelton without a pulse. Stockstill’s wife, Debra Stockstill, remained at their home with Anderson and called 911. The 911 operator advised Debra to return Anderson to his home so he could be questioned by the police. Debra drove Anderson back to his home, and Anderson remained in her car until he was taken to the hospital for medical treatment.
 

 ¶ 4. Anderson was treated and released from the hospital that same night. He then went to the Lamar County Sheriffs Department to give a statement. After Anderson was read his
 
 Miranda
 
 rights, he gave a statement regarding the events leading up to Smith’s shooting. In his statement, Anderson said he woke up to quiet his barking dogs when he saw Smith standing in the hallway. Smith then yelled, “die you son of a b-, die,” then lit either a match or lighter, and the whole hallway burst into flames. Anderson then ran back into his bedroom, pushed out the window screen, climbed out, and retrieved a 12-gauge shotgun that was propped up against his window. Anderson then saw Smith on the carport headed toward his truck, and Anderson shot him. When Smith tried to run, Anderson shot him a second time. According to Anderson, the shotgun either jammed or ran out of bullets, so he reached in the back door of his house, grabbed another shotgun, and shot Smith again.
 

 ¶5. According to Anderson, Smith had come to his house the day before “crying like a baby” because his wife, Kathy Smith, left him. Smith also asked Anderson if Kathy had ever propositioned him, to which Anderson responded that she had not. Smith then allegedly stated that he would kill Kathy and “the S.O.B. she was running around with.” Anderson told law enforcement that he and Kathy had been high-school sweethearts, but he claimed they had had no contact since then.
 

 ¶ 6. Kathy admitted at trial that she had been involved in an extramarital affair with Anderson since February 2003. Telephone records, which were presented at trial, showed that the two had spoken on the phone 109 times in April 2003, including eight times on the day Smith was killed.
 

 ¶ 7. Anderson was ultimately indicted for murder and arson. The jury found him guilty of the lesser-included offense of manslaughter. The jury was unable to reach a verdict as to the count of arson; therefore, the trial court declared a mistrial as to the arson count.
 

 DISCUSSION
 

 ¶ 8. Anderson contends that the trial court erred in granting the State’s jury instruction S-7 because it was contradictory, confusing, and did not correctly state the applicable law. Anderson asserts that when read together as a whole, the jury instructions presented to the jury at trial on this matter did not adequately inform the jurors that they were bound to acquit Anderson if they found that the shooting was justified. Anderson also asserts that he was not allowed to present his theory of self-defense to the jury. Jury instruction S-7 states:
 

 The court instructs the jury that, under the laws of Mississippi, the killing of Shelton Smith by the act, procurement, or omission of Charles Anderson would be justifiable if committed by Charles Anderson in resisting any attempt of Shelton Smith unlawfully to kill such Charles Anderson or to commit any felo
 
 *838
 
 ny upon Charles Anderson, or upon or in any dwelling house in which Charles Anderson shall actually be and if you believe the killing was thus justifiable, then you shall find the defendant, Charles Anderson, not guilty of murder. However, if based upon the evidence in this case you find, beyond a reasonable doubt, that the deceased, Shelton Smith, was not attempting unlawfully to kill Charles Anderson at the time Charles Anderson shot Shelton Smith, and that Shelton Smith was not trying to commit any felony upon Charles Anderson at the time Charles Anderson shot Shelton Smith, and that Shelton Smith was not trying to commit a felony upon or in the dwelling house in which Charles Anderson was at the time of the killing, then the killing of Shelton Smith by Charles Anderson is not justified under the law.
 

 ¶ 9. According to the record, Anderson made no objection to jury instruction S-7. “[T]he failure to object to an instruction at trial bars that issue on appeal.”
 
 Johnson v. State, 19
 
 So.3d 145, 146 (¶ 8) (Miss.Ct.App.2009). “If no contemporaneous objection is made at trial, a party must rely on the plain[-]error rule to raise the assignment of error on appeal.”
 
 Baskin v. State,
 
 991 So.2d 179,181 (¶ 9) (Miss.Ct.App.2008). “The plain[-]error doctrine has a two-part test which requires: (i) an error at the trial level and (ii) such an error resulted in a manifest miscarriage of justice.”
 
 Stephens v. State,
 
 911 So.2d 424, 432 (¶ 19) (Miss.2005).
 

 ¶ 10. Anderson makes an argument under the plain-error doctrine. He asserts that jury instruction S-7 did not notify the jury that it must acquit him of both murder and manslaughter if it found he had acted in a justifiable manner. In making this argument, Anderson focuses primarily on the fact that paragraph one instructed the jury that if it found he had acted justifiably, the jury must find that he was not guilty of murder, but the instruction did not address manslaughter. However, the second paragraph stated a killing of any kind is not justified unless Smith was attempting to kill Anderson or commit a felony upon him or his property at the time Anderson shot Smith.
 

 ¶ 11. “When considering a challenge to a jury instruction on appeal, appellate courts do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed.”
 
 Kendrick v. State,
 
 21 So.3d 1186, 1192 (¶ 18) (Miss.Ct.App.2009). According to the record, jury instruction C-2 provided that if the jury found that the State did not prove the elements of murder, the jury should consider whether Anderson was guilty of heat-of-passion manslaughter; and the instruction gave the jury a definition of heat-of-passion manslaughter. Accordingly, the jury was properly instructed, and this issue is without merit.
 

 ¶ 12. Anderson argues that the “castle doctrine” should be applied retroactively to his case. The castle doctrine, which curtailed the duty to retreat and created a presumption that the defendant reasonably feared imminent death, great bodily harm, or the commission of a felony upon him from a person who had unlawfully and forcibly entered the immediate premises of a dwelling, was enacted effective July 1, 2006, approximately one year after Anderson’s July 2005 conviction.
 
 See
 
 Miss.Code Ann. § 97-3-15 (Rev.2006). The castle doctrine made substantive changes to the law of self-defense; however, its provisions do not apply retroactively to Anderson’s case because the statute does not provide for retroactive application. Thus, this issue is also without merit.
 

 
 *839
 
 ¶ IB. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAMAR COUNTY.
 

 KING, C.J., LEE AND MYERS, PJJ, IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ„ CONCUR.
 

 [1]
 

 . Trey’s full name is not in the record.